In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 07-3325

CHRISTINE BAUER,

*Plaintiff-Appellant*,

*v.*

MICHAEL J. ASTRUE, Commissioner of Social Security,

*Defendant-Appellee*.

———————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 06 cv 697—**Rudolph T. Randa**, *Chief Judge*.

———————

ARGUED JUNE 10, 2008—DECIDED JULY 8, 2008

———————

Before POSNER, COFFEY, and FLAUM, *Circuit Judges*.

POSNER, *Circuit Judge*. The plaintiff challenges the Social Security Administration's denial (upheld by the district court) of disability benefits. She claims to be disabled by virtue of having the psychiatric illness that is nowadays called "bipolar disorder"; the older and more descriptive term is manic-depressive illness. A person suffering from the disorder has violent mood swings, the extremes of which are mania—a state of high excitement in which he loses contact with reality and exhibits bizarre behavior—and clinical depression, in which he

has great difficulty sleeping or concentrating, has suicidal thoughts and may actually attempt suicide. The condition, which varies in its severity, see American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 297-98 (4th ed. 2000), is treatable by antipsychotic drugs and other medications. Sophia Frangou, "Advancing the Pharmacological Treatment of Bipolar Depression," 11 *Advances in Psych. Treatment* 28, 31-33 (2005). But many patients do not respond well to treatment, or have frequent relapses. See, e.g., Kaan Kora et al., "Predictive Factors for Time to Remission and Recurrence in Patients Treated for Acute Mania: Health Outcomes of Manic Episodes (HOME) Study," 10 *J. Clin. Psychiatry* 114 (2008); Robert G. Bota, "Therapeutic Dilemmas in Treatment-Resistant Bipolar Patients," 101 *S. Medical J.* 584 (2008). "For many patients, the prognosis of bipolar disorder is not good, as the disorder is associated with frequent relapses and recurrences." Edward Watkins, "Combining Cognitive Therapy with Medication in Bipolar Disorder," 9 *Advances in Psych. Treatment* 110 (2003); see also *Kangail v. Barnhart*, 454 F.3d 627, 630-31 (7th Cir. 2006).

For three years (less a month) the plaintiff was regularly seen by a psychiatrist named Elizabeth Caspary and a psychologist named Robert Chucka. Both diagnosed her as bipolar. Though prescribed a variety of antipsychotic drugs, she was hospitalized several times with hallucinations, racing thoughts, thoughts of suicide, and other symptoms of bipolar disorder. As a result of the imperfect control of her disorder, both Caspary and Chucka opined that she could not hold down a full-time job. And she testified that she had been fired from her job as a medical technician because, although she takes the drugs prescribed for her faithfully (many manic depressives do

not, e.g., Gary E. Simon et al., "Long-Term Effectiveness and Cost of a Systematic Care Program for Bipolar Disorder, 63 *Gen. Psych.* 500 (2006)), her condition prevented her from working.

A consultant who has a Ph.D. in an unspecified field examined the plaintiff's medical records and concluded that although she indeed has bipolar disorder, it only moderately limits her ability to work. A vocational expert testified that, assuming the moderate limitation, there were plenty of jobs she could fill.

The administrative law judge concluded that the plaintiff can hold down a full-time job. But he ignored the "treating physician" rule, 20 C.F.R. § 404.1527(d)(2), which, as we explained in *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006), "directs the administrative law judge to give controlling weight to the medical opinion of a treating physician if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence.'" We expressed some puzzlement about the rule: "Obviously if [the treating physician's medical opinion] is well supported and there is no contradictory evidence, there is no basis on which the administrative law judge, who is not a physician, could refuse to accept it. Equally obviously, once well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight." *Id*. At that point, "the treating physician's evidence is just one more piece of evidence for the administrative law judge to weigh . . . . The [treating-physician] rule goes on to list various factors that the administrative law judge should consider, such as how often the treating physician has examined the claimant, whether the physician is

a specialist in the condition claimed to be disabling, and so forth. The checklist is designed to help the administrative law judge decide how much weight to give the treating physician's evidence. When he has decided how much actual weight to give it, there seems no room for him to attach a presumptive weight to it." *Id.* at 377.

There was evidence—the report of the nonexamining consultant—that contradicted the reports of the treating physicians. (The psychologist, Dr. Chucka, is deemed a "physician" in the sense of a medical expert with relevant expertise who treats the applicant, 20 C.F.R. §§ 404.1513(a), 404.1527(a)(2); *Bowen v. Commissioner of Social Security*, 478 F.3d 742, 747-50 (6th Cir. 2007)—in fact the technical name for the "treating physician" rule is the "treating source" rule.) So the presumption falls out and the checklist comes into play. Given that there were two treating physicians, that they were both specialists in psychiatric disorders, and that they examined the plaintiff over a period of years, the checklist required the administrative law judge to give great weight to their evidence unless it was seriously flawed. *Id.*; *Clifford v. Apfel*, 227 F.3d 863, 869-71 (7th Cir. 2000); compare *White v. Barnhart*, 415 F.3d 654, 658-59 (7th Cir. 2005); *Roberson v. Astrue*, 481 F.3d 1020, 1025 (8th Cir. 2005). The consultant did not identify a flaw in the treating physicians' analysis, but merely expressed a contrary view after reading the medical files; and it is not even clear whether he has relevant expertise for such a task, since we do not know what his field is.

Many of the reasons offered by the administrative law judge for discounting the evidence of Drs. Caspary and Chucka suggest a lack of acquaintance with bipolar disorder. For example, the judge noted that the plaintiff

dresses appropriately, shops for food, prepares meals
and performs other household chores, is an "active partici-
pator [*sic*] in group therapy," is "independent in her
personal hygiene," and takes care of her 13-year-old son.
This is just to say that the plaintiff is not a raving maniac
who needs to be locked up. She is heavily medicated,
and this enables her to cope with the challenges of daily
living, and would doubtless enable her to work on some
days. But the administrative law judge disregarded
uncontradicted evidence that the plaintiff's son cooks
most meals, washes the dishes, does the laundry, and helps
with the grocery shopping. And Caspary and Chucka,
having treated the plaintiff continuously for three years,
have concluded that she cannot hold down a full-time job.

What seems to have made the biggest impression on the
administrative law judge, but suggests a lack of under-
standing of bipolar disorder, was that Dr. Caspary's
treatment notes, which back up the report in which she
concludes that the plaintiff cannot work full time, con-
tain a number of hopeful remarks. They are either re-
marks the plaintiff made to Caspary during office visits
or Caspary's independent observations—the plaintiff's
memory was "ok," her sleep fair, she was doing "fairly
well," her "reported level of function was found to have
improved," she had "a brighter affect and increased
energy," she "was doing quite well." On the basis of
such remarks the administrative law judge concluded:
"little weight is given the assessment of Dr. Caspary."

A person who has a chronic disease, whether physical
or psychiatric, and is under continuous treatment for it
with heavy drugs, is likely to have better days and worse
days; that is true of the plaintiff in this case. Suppose that
half the time she is well enough that she could work, and

half the time she is not. Then she could not hold down a full-time job. E.g., *Watson v. Barnhart*, 288 F.3d 212, 217-18 (5th Cir. 2002); *Washington v. Shalala*, 37 F.3d 1437, 1442-43 (10th Cir. 1994). That is likely to be the situation of a person who has bipolar disorder that responds erratically to treatment. Ronald C. Kessler et al., "The Prevalence and Effects of Mood Disorders on Work Performance in a Nationally Representative Sample of US Workers," 163 *Am. J. Psychiatry* 1561-68 (2006). That is another point that the administrative law judge overlooked.

We are mindful of the distinction between a plaintiff's disabilities, a subject that medical experts know best, and the existence of jobs for someone with those disabilities. Social Security is not an unemployment program; if the plaintiff can do the tasks required by an employer, whatever they may be, the fact that employers prefer other people, and so won't hire her, does not entitle her to benefits. So when Caspary and Chucka opined that the plaintiff could not hold down a full-time job, they were not just answering a medical question; they were implicitly commenting on supply and demand. But the medical (disability) question and the economic (vocational) question are not readily separable. This is implicit in the concept of listed impairments—medical conditions that are deemed totally disabling without inquiry into labor-market conditions. 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. pt. 404, subpt. P; *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). Even in a case in which the applicant's medical condition does not meet the requirements for a listed impairment, it may be apparent to medical experts that the patient has a physical or mental condition that prevents him from performing on a full-time basis any jobs having particular requirements; as long the medical experts

understand those requirements, they may report or testify that the patient is unable to perform those jobs. *Robson v. Astrue*, 526 F.3d 389, 393 (8th Cir. 2008); *Wagner v. Astrue*, 499 F.3d 842, 850 and n. 2 (8th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 634 (9th Cir. 2007); *Mills v. Apfel*, 244 F.3d 1, 7 (1st Cir. 2001). Their judgment is not conclusive, *id.*; *Robson v. Astrue*, *supra*, 526 F.3d at 393, but in this case it was not offset by evidence concerning the availability of jobs to someone having the plaintiff's disorder plus her other characteristics.

The judgment of the district court is reversed and the case is remanded to the Social Security Administration.