# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-2421

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

*v.*

THOUVENOT, WADE & MOERSCHEN, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:05-cv-306-DRH-DGW—**David R. Herndon**, *Chief Judge*.

No. 09-1232

CHRISTINE M. BAUER,

*Plaintiff-Appellant*,

*v.*

MICHAEL J. ASTRUE, Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:06-cv-697-RTR—**Rudolph T. Randa**, *Chief Judge*.

No. 09-2574

RONALD J. PARK,

*Plaintiff-Appellant,*

*v.*

MICHAEL J. ASTRUE, Commissioner of Social Security,

*Defendant-Appellee.*

---

Appeal from the United States District Court
for the Central District of Illinois.
No. 2:07-cv-2227-HAB-DGB—**Harold A. Baker**, *Judge*.

---

ARGUED DECEMBER 1 AND 2, 2009—DECIDED FEBRUARY 18, 2010

---

Before POSNER, FLAUM, and SYKES, *Circuit Judges*.

POSNER, *Circuit Judge*. We have consolidated for decision three appeals, argued before the same panel on consecutive days, that require interpretation of the Equal Access to Justice Act. The Act entitles a party that prevails in litigation with the United States (including proceedings for judicial review of agency action) to attorneys' fees "unless the court finds that the position of the United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A). The issue in each appeal is whether the government's position was "substantially justified," but in No. 09-2421, with which we begin, there is an additional issue—whether attorneys' fees paid to a defendant's

liability insurer can be awarded under the Act. The district judge awarded TWM (Thouvenot, Wade & Moerschen) some $200,000 in attorneys' fees; its liability insurer paid for its defense and so will receive $150,000 because the policy specified a $50,000 deductible.

The United States sued the project site engineer of an apartment complex, charging TWM along with others (who are not parties to the appeal) with having designed and built a project that violated the Federal Housing Act because it wasn't accessible to persons having a disability: the ground floor was sunk four feet below the level of the parking lot and there was no ramp, just steps. The lack of access to disabled persons was apparent from plans prepared by TWM. Though they were marked "for construction," the company denied that they had been intended for use in construction and moved for summary judgment, which was denied. The case was tried to a jury. At the close of the government's case, and again at the end of the entire trial, the defendant moved for entry of judgment as a matter of law. The judge denied the motions. He said "the jury could believe that throughout this construction, these plans were used by everyone. We have a jury who could clearly believe that TWM was involved in both the design and the construction and given the Fair Housing Act, could believe that they are culpable." But the jury returned a verdict for the defendant.

In justifying his award of attorneys' fees despite having refused to take the case from the jury, the district judge said that "upon reviewing the evidence, Plaintiff's

position was not substantially justified and the jury ruled accordingly." This is a mysterious statement because of course the jury had not been asked to decide whether the position of the United States had been substantially justified, and did not offer an opinion on the issue. The judge later amplified his grounds slightly, saying that "after reviewing all of the evidence presented at trial, the Court finds that Defendant TWM clearly did not belong in this case. As Defendant TWM points out, the evidence showed that TWM was only involved in the zoning process and had no role in designing the complex, nor were its drawings prepared as building plans."

The key statutory term, "substantially justified," is neither defined nor self-evident. If it just meant not frivolous, there would be no problem because usually it's pretty easy to distinguish a frivolous from a nonfrivolous case. But the courts have not taken that road. *Pierce v. Underwood*, 487 U.S. 552, 566 (1988); *Gerow v. Rohm & Haas Co.*, 308 F.3d 721, 726 (7th Cir. 2002); *Halverson v. Slater*, 206 F.3d 1205, 1210 (D.C. Cir. 2000). The title of the statute—*Equal* Access to Justice Act—and the fact that eligibility for an award is limited to persons and organizations of limited financial means (with immaterial refinements and exceptions, the prevailing party may not have a net worth in excess of $2 million if an individual and $7 million if an organization, 28 U.S.C. § 2412(d)(2)(B)) suggest that Congress's concern was not limited to frivolous cases—that it wanted the government to take care before deploying its formidable litigation resources against a weak opponent. See *McDonald v.*

*Schweiker*, 726 F.2d 311, 315 (7th Cir. 1983); *Dole v. Phoenix Roofing, Inc.*, 922 F.2d 1202, 1207 (5th Cir. 1991); *Myers v. Sullivan*, 916 F.2d 659, 667-68 (11th Cir. 1990); *Feldpausch v. Heckler*, 763 F.2d 229, 231-32 (6th Cir. 1985). The Equal Access to Justice Act has thus been called an "anti-bully" law. *Battles Farm Co. v. Pierce*, 806 F.2d 1098, 1101 (D.C. Cir. 1986), vacated and remanded, 487 U.S. 1229 (1988), for reconsideration in light of *Pierce v. Underwood*; Melissa A. Peters, "The Little Guy Myth: The Fair Act's Victimization of Small Business," 42 *Wm. & Mary L. Rev*. 1925, 1928-30 (2001).

Between frivolous and meritorious lie cases that are "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person [and hence has a] 'reasonable basis both in law and fact.'" *Pierce v. Underwood*, *supra*, 487 U.S. at 565; see also *Potdar v. Holder*, 585 F.3d 317, 319-20 (7th Cir. 2009); *Kolman v. Shalala*, 39 F.3d 173, 177 (7th Cir. 1994); *Ericksson v. Commissioner of Social Security*, 557 F.3d 79, 81-82 (2d Cir. 2009). The case must have sufficient merit to negate an inference that the government was coming down on its small opponent in a careless and oppressive fashion.

But, consistent with this standard, there is a presumption that a government case strong enough to survive both a motion to dismiss and a motion for summary judgment is substantially justified. See *EEOC v. Liberal R-II School District*, 314 F.3d 920, 926 (8th Cir. 2002). Given the Supreme Court's insistence in its recent *Bell Atlantic* and *Iqbal* decisions that a case must be dismissed if the complaint does not appear to have a substantial basis, *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009); *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 559-63 (2007), and given that summary judgment resolves cases that though not frivolous would not persuade a reasonable jury, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-56 (1986); *Simple v. Walgreen Co.*, 511 F.3d 668, 671 (7th Cir. 2007); *Boyd v. Wexler*, 275 F.3d 642, 647 (7th Cir. 2001), a case that is allowed to go all the way to trial is likely to be a toss-up.

Of course something might emerge at trial that showed that the government really had no case at all. Or the district judge might on reflection decide that he had erred grievously in refusing to grant the defendant's motion to dismiss or motion for summary judgment. But in this case the presumption stands unrebutted. See *Wilfong v. United States*, 991 F.2d 359, 367-69 (7th Cir. 1993); cf. *Temp Tech Industries, Inc. v. NLRB*, 756 F.2d 586, 590 (7th Cir. 1985); *Mester Mfg. Co. v. INS*, 900 F.2d 201, 204 (9th Cir. 1990). Fees were awarded solely because the jury's verdict was adverse to the government, and an award of fees in such a case is error, as we held in the *Wilfong* case.

In deciding to award fees the district judge gave no weight to his rulings denying TWM's motions for summary judgment, for judgment as a matter of law at the close of the government's evidence, and for judgment as a matter of law at the close of all the evidence. After hearing all the evidence he had decided that the government had a substantial case and therefore the jury would be permitted to decide it, and the only thing that happened afterward was that the jury rendered a verdict for TWM. This impelled the judge to review the evidence after the defendant filed its motion for an

award of attorneys' fees. But all he found in his review, judging from his cryptic discussion, was that the jury's verdict was justified by the evidence, which no one questions. He pointed to nothing that suggested that the trial had revealed profound weaknesses in the government's case that, had he known about them earlier, would have moved him to grant one of TWM's dispositive motions. Nor can we find anything.

There was evidence that TWM did not think that its drawings, which depicted sewer lines, water lines and other subdivision improvements, and were preliminary and unsigned, would be used to construct the apartment complex—evidence that they were subdivision-improvement plans rather than building plans and that, being intended to be used to obtain a building permit and the Village Planning Commission's approval for the project, they merely illustrated the project's general conception and contours and omitted technical details. Yet the plans showed the difference in elevation between the parking lot and the ground floor; a ramp had been included but was later deleted; and TWM went on site to "stake" the first six buildings and did so in a manner that indicated that the entrances would indeed be below ground level. Thus there was evidence that TWM knew that regardless of the original purpose of the plans, they were being used as building plans, at least with regard to how the buildings would be entered. So the government had a substantial though not winning case, and TWM therefore failed to establish its right to an award.

But we agree with the district judge that an award of attorneys' fees under the Equal Access to Justice Act can

include fees incurred by the party's liability insurer. It is not strictly necessary for us to decide the issue, since we have just held that TWM was not entitled to an award, whether to share with its insurer or not. But the issue is a recurrent one that has divided the circuits to have considered it: compare *United States v. Paisley*, 957 F.2d 1161, 1163-64 (4th Cir. 1992), and *SEC v. Comserv Corp.*, 908 F.2d 1407, 1413-16 (8th Cir. 1990), which hold that the award cannot include such expenses when the litigant has been indemnified by his employer (and we cannot see what difference it makes who the indemnitor is), with *Ed A. Wilson, Inc. v. General Services Administration*, 126 F.3d 1406, 1408-11 (Fed. Cir. 1997); see also *Morrison v. Commissioner*, 565 F.3d 658, 662-66 (9th Cir. 2009). Since the issue has been fully briefed and argued, we might as well take a stand on it for the guidance of the district courts of this circuit.

The case for inclusion is compelling. Suppose a party seeking an award of fees had been uninsured and had agreed to pay a lawyer's fee as he had to do in order to induce the lawyer to take his case; but, being worried that if he lost he wouldn't be able to afford the fee, he borrowed $150,000 from his rich uncle, promising to pay it back if he won his case and received a fee award. Suppose the rich uncle has a net worth in excess of $2 million and therefore would not be entitled to an award of attorneys' fees if he were the prevailing party in the case; and anyway he is not a party. But the award is not to him, it is to his nephew, who is the party; what the party does with the money—buy a Rolls Royce or repay his uncle—is his business.

Liability insurance is the same; it is a contingent loan. The insured pays premiums and in exchange is promised that the insurance company will bear the cost of the insured's defense (subject to a deductible) if he is sued on a claim that the policy covers. But to minimize his premiums the insured agrees to repay that cost to the extent it is covered by a court award of attorneys' fees. Nothing in the Equal Access to Justice Act suggests a purpose to prevent such a contractual arrangement, or, more broadly, to discourage the purchase of liability insurance.

Another way to look at the insurance contract—but it leads to the same conclusion—is that the insurance premiums are the fee that the insured pays for the insurance company's defense of his case. *Ed A. Wilson, Inc. v. General Services Administration*, *supra*, 126 F.3d at 1410-11; see also *Morrison v. Commissioner*, *supra*, 565 F.3d at 663. The defense costs that the insurance company will end up paying are probabilistic rather than certain, because the insurance company may never be called on to defend the insured—he may not be sued on a claim covered by the policy. But in an actuarial sense the cost of the defense, to the extent borne by the insurance company, is a cost that the insured paid for, just as he would have paid a lawyer for his defense had he had no insurance.

There is a legitimate concern with what has been called the problem of the "stand-in litigant," *SEC v. Comserv Corp.*, *supra*, 908 F.2d at 1416—where the real party in interest, being ineligible by reason of its size or affluence for an award of fees under the Equal Access to Justice

Act, finds someone to litigate in its place and pays the stand-in's fees. That is not a problem here; the insurance company has no quarrel with the government.

We move on to our next two cases, both of which involve claims by persons who prevailed in litigation with the Social Security Administration over their claims for social security disability benefits. The difference between such cases and TWM's case is that in an appeal from the decision of an administrative agency the court has to decide not whether the government lacked substantial justification for bringing the case—for a social security case begins as an application for bene-fits—but whether the agency had a substantial justi-fication for turning down the application. *Stewart v. Astrue*, 561 F.3d 679, 683 (7th Cir. 2009) (per curiam); *Bricks, Inc. v. EPA*, 426 F.3d 918, 922 (7th Cir. 2005); *Hill v. Gould*, 555 F.3d 1003, 1006 (D.C. Cir. 2009).

The appeal in a social security case goes from the agency to the district court rather than directly to the court of appeals, but the loser in the district court can appeal to the court of appeals. In No. 09-1232, the district court affirmed the denial of Bauer's application for benefits, but we reversed, *Bauer v. Astrue*, 532 F.3d 606 (7th Cir. 2008), and she then moved in the district court for an award of fees. As a result of our reversal of the district court the matter had gone back to the Social Security Adminis-tration for a redetermination of Bauer's entitlement to benefits. The proceedings on remand were not yet com-pleted (as far as we know they still haven't been—and in our other social security case, we *know* the proceedings

on remand had not been completed when the appeal was argued to us) when her motion for fees was considered. But her success in our court in obtaining the vacation of the Administration's denial of benefits (rather than merely a remand to enable the agency to consider new evidence), showing that she had incurred additional legal expenses as a result of the agency's error, made her a prevailing party within the meaning of the Equal Access to Justice Act, whatever the ultimate outcome of her claim for benefits. *Shalala v. Schaefer*, 509 U.S. 292, 300-02 (1993); *Conrad v. Barnhart*, 434 F.3d 987, 990 (7th Cir. 2006); *Le v. Astrue*, 529 F.3d 1200, 1201 and n. 1 (9th Cir. 2008); see also *Muhur v. Ashcroft*, 382 F.3d 653, 654-55 (7th Cir. 2004).

A district judge who has been reversed for ruling against the party that the court of appeals decides should have prevailed must be careful not to let his superseded view of the merits color his determination of whether there was a substantial justification for the government's position. *United States v. Real Property at 2659 Roundhill Drive*, 283 F.3d 1146, 1152-53 (9th Cir. 2002); *Friends of Boundary Waters Wilderness v. Thomas*, 53 F.3d 881, 885-86 (8th Cir. 1995); *Oregon Natural Resources Council v. Madigan*, 980 F.2d 1330, 1332 (9th Cir. 1992). He must accept the appellate court's view of the merits as the premise for evaluating the government's position. Our view might be that it was a close case—that the government's position, though the district judge should in the end have rejected it, was substantially justified. See *United States v. Paisley*, *supra*, 957 F.2d at 1167-68. But if it is apparent from our opinion that we think the government lacked a sub-

stantial justification for its position, though the judge had thought it not only substantially justified but correct, he must bow. *Golembiewski v. Barnhart*, 382 F.3d 721, 724-25 (7th Cir. 2004); *Friends of Boundary Waters Wilderness v. Thomas, supra*, 53 F.3d at 885-86.

This is such a case; the district court's evaluation of substantial justification is inconsistent with our merits opinion. Bauer based her claim of disability on the fact that she is afflicted with bipolar disorder; in an older vocabulary, she is manic-depressive. Our opinion explained that "a consultant who has a Ph.D. in an unspecified field examined the plaintiff's medical records and concluded that although she indeed has bipolar disorder, it only moderately limits her ability to work." 532 F.3d at 607. His evaluation was contradicted by Bauer's two treating physicians. Since they "were both specialists in psychiatric disorders" and had "examined the plaintiff over a period of years," the administrative law judge was required by law "to give great weight to their evidence unless it was seriously flawed. The consultant did not identify a flaw in the treating physicians' analysis, but merely expressed a contrary view after reading the medical files; and it is not even clear whether he has relevant expertise for such a task, since we do not know what his field is." *Id*. at 608 (citations omitted).

We went on to say that "many of the reasons offered by the administrative law judge for discounting the evidence of [the two treating physicians] suggest a lack of acquaintance with bipolar disorder. For example, the judge noted that the plaintiff dresses appropriately,

shops for food, prepares meals and performs other household chores, is an 'active participator [*sic*] in group therapy,' is 'independent in her personal hygiene,' and takes care of her 13-year-old son. This is just to say that the plaintiff is not a raving maniac who needs to be locked up. She is heavily medicated, and this enables her to cope with the challenges of daily living, and would doubtless enable her to work on some days . . . . What seems to have made the biggest impression on the administrative law judge, but suggests a lack of understanding of bipolar disorder, was that [the] treatment notes [of one of the treating physicians], which back up the report in which she concludes that the plaintiff cannot work full time, contain a number of hopeful remarks . . . the plaintiff's memory was 'ok,' her sleep fair, she was doing 'fairly well,' her 'reported level of function was found to have improved,' she had 'a brighter affect and increased energy,' she 'was doing quite well.' On the basis of such remarks the administrative law judge concluded: 'little weight is given the assessment of [that treating physician].' A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days; that is true of the plaintiff in this case." *Id*. at 608-09.

The basis for the district court's refusal to award fees to Bauer is found in two sentences in his order: "Despite the ALJ's misapprehension of bipolar disorder, there was evidence in the record that contradicted the reports of the treating physicians, and the Seventh Circuit ac-

knowledged as much. [532 F.3d] at 608. Many of the notes from the treating physicians contained conflicting evidence regarding Bauer's conditions and symptoms." That is a misreading of this court's opinion, as should be apparent from the passages that we quoted from it. Because the consultant—he of the Ph.D. in an unidentified subject—disagreed with the two treating physicians, the administrative law judge could not just rely on those physicians' evidence but had to decide how much weight to give it. 532 F.3d at 608, citing *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006). And as we went on to explain, the consultant's evidence was entitled to no weight at all; he had not explained the basis for his evaluation of Bauer's condition and it was unclear whether he even had any relevant expertise. As for "conflicting evidence" in the treatment notes of the treating physicians, our opinion explained that there was no conflict. It was merely a matter of noting that Bauer had good days and bad days, a pattern consistent with bipolar disorder.

The evidence that she was totally disabled was essentially uncontradicted. The consultant's evaluation was entitled to no weight, and the "conflicting evidence" was consistent with a condition that had convinced the treating physicians that she could not hold down a full-time job. (For two very similar cases, see *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008), and *Shontos v. Barnhart*, 328 F.3d 418, 425-27 (8th Cir. 2003).)

It could be argued that whatever the deficiencies of the district court's ruling on the merits of the agency's denial

of benefits, the fact that the government was able to persuade a federal judge that it had not only a reasonable case, but a winner, should create an irrebuttable presumption that the government's position was substantially justified. We disagree. The concept of "abuse of discretion" recognizes the possibility that a judge will at times reach a result that persuades the appellate court that he made an unreasonable ruling, rather than a ruling that was at least arguably correct. No doubt the government like other litigants occasionally prevails, at least at the trial level, when its position is not substantially justified; and that is what happened in the *Bauer* case.

We come last to No. 09-2574 (*Park*). Park was denied disability benefits, like Bauer, and appealed to the district court, which reversed (and the government did not appeal the reversal) but denied Park's application for an award of fees under the Equal Access to Justice Act. The reversal of the denial of benefits had been based on two features of the administrative law judge's opinion. The first was his possible mischaracterization of the testimony by a friend of Park's named Nicholson concerning Park's ability to work, and specifically whether Nicholson had testified that he allowed Park to live rent-free in a trailer that Nicholson owned in exchange for Park's doing odd jobs for him. The administrative law judge thought so, but the transcript of the hearing provides only scanty support. In response to his question, "He [Park] does help out and that's why you're so willing to let him use the trailer, otherwise you could run him out, right?" Nicholson responded ambiguously, "Well, yeah,

I could." He may just have been confirming that he could expel Park at any time because it was Nicholson's trailer and Park had no lease, consistent with his testimony that he let him stay in the trailer for free.

The district court thought that the administrative law judge had unfairly hectored Park's lawyer when he was questioning Nicholson, and, in reversing, the court ordered the Social Security Administration to assign the case to a different administrative law judge. That was error. Courts can suggest but cannot require a change of administrative law judges, *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996); *Travis v. Sullivan*, 985 F.2d 919, 924 (7th Cir. 1993), unless the administrative law judge has demonstrated a degree of bias—which he had not—that would disqualify him as a matter of due process from further participation in the litigation, *Reed v. Massanari*, 270 F.3d 838, 845 (9th Cir. 2001); *Miles v. Chater*, 84 F.3d 1397, 1400-01 (11th Cir. 1996); *Ventura v. Shalala*, 55 F.3d 900, 902-05 (3d Cir. 1995)—in which event the Social Security Administration's own regulation would disqualify him. 20 C.F.R. § 404.940.

Second, the district court faulted the administrative law judge for failing to explain adequately how Park's breathing difficulties affected his ability to work. Park had been diagnosed with Chronic Obstructive Pulmonary Disease (COPD), an umbrella term for a group of lung diseases, principally chronic bronchitis and emphysema. National Heart, Lung, & Blood Institute, Department of Health & Human Services, "What is COPD?", www.nhlbi.nih.gov/health/dci/Diseases/Copd/Copd_WhatIs.html

(visited Jan. 31, 2010); Mayo Clinic, "COPD: Definition", www.mayoclinic.com/health/copd/ds00916 (visited Jan. 31, 2010). The record does not reveal which Park suffers from.

These deficiencies in the administrative law judge's opinion do not establish (or so at least the district court could find without abusing its discretion, the proper standard, *Pierce v. Underwood*, *supra*, 487 U.S. at 559-61) either that his decision was not substantially justified or that the government lacked a substantial basis for defending the denial of benefits. Nicholson's testimony about whether Park did any work for him was ambiguous; and because social security disability hearings are nonadversary, the administrative law judge is entitled to probe a witness's testimony by questions that would be inappropriate in an adversary proceeding. Park's testimony presented a number of credibility issues, and the district court ruled that the administrative law judge had not erred in disbelieving his claim that his psychiatric problems and physical limitations were totally disabling.

Although the administrative law judge did not name Park's breathing problems COPD, she did discuss them; Park's lawyer has not indicated what specific disease (for remember that COPD is a portmanteau term) his client suffers from. The administrative law judge's most serious errors in considering the medical evidence were a failure to mention that Park takes oxygen for his breathing problem and, more broadly, to relate those problems to his ability to work. But there was other evidence concerning his physical capabilities, and

without greater specification by Park's lawyer as to what exactly his client's breathing problems were—their cause and severity—we cannot say that the district court was wrong to conclude that the administrative law judge's analysis, though cursory and inadequate, did not lack substantial justification.

The posture of our review is different from what it was in Bauer's case. There the district judge had initially thought the government's position not only sub-stantially justified but correct, and we have warned against allowing such a judgment, if reversed, to infect the determination of whether to award fees. In Park's case, in contrast, the district court, having emphatically reversed the denial of benefits, nevertheless was persuaded that the agency's position had been substan-tially justified; that decision is entitled to substantial weight.

To summarize, the grant of fees is reversed in *TWM*; the denial of fees is reversed in *Bauer* and affirmed in *Park*.