[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11971
_____

D.C. Docket No. 7:13-cv-00007-HL


TERESA A. MACE,

                                                    Plaintiff-Appellant,

versus

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

                                                    Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(March 27, 2015)

Before MARCUS and ROSENBAUM, Circuit Judges, and FRIEDMAN,[*] District
Judge.

PER CURIAM:

_____

[*]Honorable Paul L. Friedman, United States District Judge for the District of Columbia,
sitting by designation.

Teresa Mace appeals the district court's order affirming the Commissioner of Social Security's ("Commissioner") denial of her applications for a period of disability, disability insurance benefits, and supplemental security income, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Mace presents two contentions on appeal: (1) the administrative law judge ("ALJ") did not have "good cause" to afford little weight to the medical opinion of her treating physician, Dr. Michael Vandewalle; and (2) the Appeals Council should have vacated the ALJ's decision in light of new, material evidence supporting her disability. After careful review, we vacate the judgment of the district court and remand with instructions to reverse the denial of benefits and to return the case to the Commissioner for further proceedings consistent with this opinion.

**I.**

Mace applied for disability benefits in March 2011 based on her bipolar disorder and major depression, alleging a disability onset date in October 2009. She indicated that she had been fired from her last two jobs for making inappropriate comments. A hearing before an ALJ was held on her application in May 2012.

At the time of the ALJ hearing, medical records showed that from 1998 to 2007 Mace had been hospitalized at least three times in connection with her bipolar disorder. In November 2007, Mace began receiving psychiatric treatment at

Georgia Pines from Dr. Michael Vandewalle, who diagnosed Mace with moderate bipolar disorder and assigned her a score of 55 on the Global Assessment of Functioning ("GAF") scale.[1]  Dr. Vandewalle was Mace's primary physician with respect to her bipolar disorder at all times relevant to this appeal.

From January 2008 until the end of 2009, Mace's bipolar disorder was diagnosed as mild or in remission.  In January 2010, however, Mace was hospitalized at Southwestern State Hospital for 23 days because she had threatened to commit suicide and had made violent threats towards hospital staff.  Mace responded favorably to a change in her medications, and from February 2010 to early 2012, Mace was evaluated by Dr. Vandewalle and others as having mild to moderate bipolar disorder, with occasional suicidal thoughts.  Mace also experienced some auditory hallucinations and was diagnosed with bipolar-type schizoaffective disorder in 2011.  To control the symptoms of these impairments, Mace at various times took combinations of medication, including Seroquel, Wellbutrin SR, Lithium Carbonate, Vistaril, Abilify, Celexa, Deseryl, and Risperdal.

In April 2012, Dr. Vandewalle prepared a report concluding that Mace met the disability requirements of 20 C.F.R. § 404, Subpt. P, App. 1, Listings 12.03

---

[1] The GAF is a numeric scale intended to rate the psychological, social, and occupational functioning of adults.  Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32, 34 (4th ed. 2000).  Scores between 51 and 60 indicate moderate difficulty in functioning, whereas scores between 61 and 70 indicate mild difficulty.

(Schizophrenic, Paranoid, and Other Psychotic Disorders) and 12.04 (Affective Disorders). He indicated that she had marked limitations in maintaining social function and in maintaining concentration, persistence, or pace.[2] Dr. Vandewalle explained that Mace was not emotionally capable of performing work-like activities within a set schedule and would require close supervision. He further stated that Mace had difficulty maintaining socially appropriate behaviors outside her immediate environment.

In addition to being evaluated by Dr. Vandewalle, Mace was evaluated by two clinical psychologists. In July 2010, Dr. Cerjan found that Mace seemed capable of understanding and carrying out simple instructions, though she decompensated every two years. Dr. Cerjan did not consider Mace at that time to be depressed to the point that her depression would decrease her concentration and pace, and Dr. Cerjan concluded that Mace appeared "capable of adapting to work related stress for short periods of time."

In August 2011, Dr. Mannis diagnosed Mace with schizoaffective disorder of the bipolar type and personality disorder with histrionic and dependent features. Dr. Mannis concluded that Mace was capable of "very brief appropriate social interaction with known individuals and new acquaintances," and she would excel

---

[2] To meet the listing criteria for Listings 12.03 and 12.04, a claimant must show at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation (three episodes within one year), each of extended duration. *See* 20 C.F.R. § 404, Subpt. P. App. 1, Listings 12.03 and 12.04.

4

in scripted or predetermined interactions, but she did not appear capable of extensive social interaction.  Dr. Mannis further explained that Mace appeared capable of simple, highly supervised activities.  In his April 2012 report, Dr. Vandewalle noted that he agreed with Dr. Mannis's evaluation.

After Mace's disability hearing in May 2012, the ALJ denied her claims on the basis that she had not been disabled from the onset date of October 31, 2009, through June 29, 2012, the date of the decision.  The ALJ determined that the severity of Mace's mental impairments—bipolar disorder, depression, and personality disorder with histrionic and dependent features—did not meet or medically equal the severity of a specific impairment from the regulations.  The ALJ further found that, while she could not return to past work, Mace had the residual functional capacity to perform a full range of work at all exertional levels, but was limited to work that involved simple, routine, and repetitive tasks with only occasional changes in work setting and only occasional interaction with the public, coworkers, and supervisors.  The ALJ specifically noted that Mace appeared able to sustain work "until she has a brief decompensation (approximately every two years per self-report)."

In addition to Mace's medical history, function report, and personal testimony, the ALJ considered the assessments performed by Dr. Cerjan, Dr. Mannis, and Dr. Vandewalle.  In pertinent part, the ALJ gave "little weight" to

Dr. Vandewalle's opinion, finding that Dr. Vandewalle's conclusions were inconsistent with the overall evidence. The ALJ also found that Dr. Mannis's testimony was entitled to little weight because it was inconsistent with contemporaneous treatment notes. The ALJ gave "some weight" to Dr. Cerjan's assessment to the extent that it was consistent with the ALJ's determination of Mace's residual functional capacity.

Following the ALJ's denial of benefits, Mace appealed to the Appeals Council and presented new evidence that she had been hospitalized for a week in September 2012 after fighting with her roommate, Debra Sloan, and then attempting suicide. Dr. Kenneth Fuller, the psychiatrist who treated her at the hospital, opined that Mace was "severely psychiatrically impaired and is currently totally disabled." The Appeals Council denied Mace's request for review, stating that "we considered the reasons you disagree with the decision and the additional evidence listed . . . . We found that this information does not provide a basis for changing the [ALJ's] decision."

Mace then filed a complaint against the Commissioner in the United States District Court for the Middle District of Georgia, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The magistrate judge recommended the affirmance of the Commissioner's decision, and, over Mace's objections, the district court adopted the magistrate judge's recommendation and affirmed the Commissioner's decision.

**II.**

We review the ALJ's decision for substantial evidence, but we review the ALJ's application of legal principles *de novo*.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).  When the Appeals Council denies review of the ALJ's decision, we review the ALJ's decision as the Commissioner's final decision.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Moore*, 405 F.3d at 1211.  We may not decide the facts anew, make credibility determinations, or re-weigh the evidence.  *Id.*  (Citation omitted).

**III.**

Mace presents two arguments on appeal.  First, she argues that the ALJ erred in failing to give controlling weight to the medical opinion of her treating physician, Dr. Vandewalle.  Second, she contends that the Appeals Council erred in failing to vacate the ALJ's denial of benefits in light of new, material medical evidence.

The claimant bears the burden of proving that she is disabled.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); 20 C.F.R. §§ 404.1512(a), 416.912(a).  The Social Security regulations outline a five-step process used to make that determination.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  At the first

two steps, which are not at issue, the claimant must show that she is not currently engaged in substantial gainful activity and that she has a severe impairment. *See id.* §§ 404.1520(a)(4)(i) and (ii), 416.920(a)(4)(i) and (ii). Third, the claimant has the opportunity to show that the impairment meets or equals the criteria contained in one of the Listings of Impairments. *See id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). At the fourth step, if the claimant cannot meet or equal the criteria in one of the Listings, the ALJ considers the claimant's residual functional capacity and the claimant's past relevant work to determine if she has an impairment that prevents her from performing her past relevant work. *See id.* §§ 404.1520(a)(4)(iv), (e), 416.920(a)(4)(iv), (e). Finally, if the claimant cannot perform her past work, the burden shifts to the Commissioner to show that there are jobs that the claimant can perform. *See Jones*, 190 F.3d at 1228; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The Social Security regulations provide that a treating source's opinion is given controlling weight unless it is not supported by medically acceptable techniques or is inconsistent with the other substantial evidence. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Likewise, we have held that an ALJ must give a treating physician's opinion "substantial or considerable weight" unless there is "good cause" not to do so. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). We have found that "good cause" exists "when the: (1) treating physician's

opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quotation marks omitted).  The ALJ must clearly articulate her reasons for giving less weight to a treating physician's opinion. *Id.*

Both Mace and the Commissioner agree that Dr. Vandewalle was a treating physician.  Thus, the relevant question is whether the ALJ had good cause to give his opinion "little weight." *See Lewis*, 125 F.3d at 1440.

The ALJ explained that she gave Dr. Vandewalle's opinion little weight because it was "not supported by the overall evidence of record . . . ."  Specifically, the ALJ had the following problems with Dr. Vandewalle's opinion:  (1) Dr. Vandewalle asserted that Mace had "compromised interactions with the public," that she would most likely respond to criticism at work with resistance if she were hypomanic, and that she had "difficulty maintaining socially appropriate behaviors outside her immediate environment and [had] demonstrated difficulty establishing and maintaining positive relationships with peers," but Mace herself had reported that she got along well with authority figures and had no problems "getting along with family, friends, neighbors, and others," that she enjoyed spending time with her friend Ms. Sloan,[3] and that she used Facebook to talk to family and friends; (2)

---

[3]  Sloan reported that she was Mace's only friend.  Subsequently, the September 2012

Dr. Vandewalle opined that at certain times, Mace had difficulty performing functions such as concentrating, doing simple rote tasks, and remembering instructions, but that at other times, she was capable of engaging in these activities at least for "short periods," while Mace reported that she "finished things she started"; (3) Dr. Cerjan concluded, allegedly contrary to Dr. Vandewalle, that Mace "seemed capable of understanding and carrying out simple instructions[,] given her ability to maintain her own home for periods of time, although she reported decompensating every two years," and that Mace did not appear to be so depressed that her concentration and pace might be decreased; and (4) on August 9, 2011, Mace described her overall mood as good and stated that her medication managed her acute symptoms, and on February 20, 2012, Mace reported that she took her medicine and was not having mood swings as much.

We do not agree that these explanations, in and of themselves, establish good cause for according little weight to the opinion of Dr. Vandewalle. *See Lewis*, 125 F.3d at 1440. The ALJ's rationale for discrediting the opinion of Dr. Vandewalle suffers from two central defects, which, in combination, require remand for further proceedings.

First, we conclude that the ALJ failed to consider that persons with chronic psychotic mental impairments like Mace "may commonly have [their] li[ves]

---

incident that resulted in Mace's weeklong hospitalization arose from a dispute with Sloan.

10

structured in such a way as to minimize [their] stress and reduce [their] symptoms and signs." 20 C.F.R. § 404, Subpt. P., App. 1, § 12.00(E). For that reason, such individuals "may be much more impaired for work than [their] symptoms and signs would indicate." *Id.*; *see also* 20 C.F.R. § 404, Subpt. P., App. 1, § 12.00(C)(3) ("We must exercise great care in reaching conclusions about [a claimant's] ability or inability to complete tasks under the stresses of employment during a normal workday or work week based on a time-limited mental status examination or psychological testing by a clinician, or based on [a claimant's] ability to complete tasks in other settings that are less demanding, highly structured, or more supportive."); *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001) ("With regard to mental disorders, the Commissioner's decision must take into account evidence indicating that the claimant's true functional ability may be substantially less than the claimant asserts or wishes." (citation and internal quotation marks omitted)).

Because the ALJ did not account for the effect of the environment on Mace, the ALJ found inconsistencies between Dr. Vandewalle's opinion and the evidence that were largely illusory, often emphasizing the importance of evidence regarding Mace's signs and symptoms without addressing how her mental impairments would translate to consistent employment in a competitive work environment.

11

For example, the ALJ primarily discredited Dr. Vandewalle's opinion regarding Mace's social functioning based on Mace's statements that she got along well with authority figures, family, friends, and neighbors; that she went to church; that she enjoyed spending time with her friend and roommate Ms. Sloan; and that she talked to friends and family on Facebook.[4]   But Dr. Vandewalle's opinions were expressed in terms of limitations Mace would experience "at times" or "at the time," depending on her mood and other factors.  The fact that, at other times, Mace would not experience those limitations does not negate Dr. Vandewalle's opinion, nor does it show that Mace would be able to maintain consistent employment.  *See Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008).

Significantly, Dr. Vandewalle found that Mace had "difficultly maintaining socially appropriate behaviors outside her immediate environment," which was consistent with Dr. Cerjan's statement that Mace did not "socialize with others in the community" and Dr. Mannis's finding that Mace was capable of "very brief social interaction with known individuals and new acquaintances" but was not capable of "extensive social interaction."  Mace was fired from two jobs for making inappropriate comments—one to a patient when Mace was working as a licensed practical nurse, and one to a coworker.  None of the evidence regarding the self-reported social activities Mace engaged in, which are limited to immediate,

---

[4]   These statements appear to be taken primarily from Dr. Cerjan's evaluation in July 2010.

controlled environments, contradicts those opinions.  Mace also testified that she has trouble in the church setting and that she sits in the back at church so that she can leave quickly.  All of this evidence emphasizes the difference between Mace's ability to function in a controlled home environment versus her ability (or, more accurately, inability) to function under the regular stresses of a work environment—a difference that the ALJ's decision does not address.

And we see no indication from the ALJ's decision that the ALJ considered that Mace may have been "much more impaired for work than [her] symptoms and signs would indicate," particularly when those assessments were from times during which Mace was not employed.  *See* 20 C.F.R. § 404, Subpt. P., App. 1, § 12.00(E).  The ALJ did not explain, and we do not find apparent, how these notes and comments regarding Mace's symptoms at a given time when she was not working were inconsistent with Dr. Vandewalle's or Dr. Mannis's evaluations about how Mace's bipolar disorder and other mental impairments would manifest in the context of the stresses of a competitive work environment.  *Cf. Hutsell*, 259 F.3d at 712 ("We also believe that the Commissioner erroneously relied too heavily on indications in the medical record that Hutsell was 'doing well,' because doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity.") (citation omitted).

Second, the ALJ's decision largely ignores the episodic nature of the disability alleged. As the Seventh Circuit has explained,

> A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days; that is true of the plaintiff in this case. Suppose that half the time she is well enough that she could work, and half the time she is not. Then she could not hold down a full-time job. That is likely to be the situation of a person who has bipolar disorder that responds erratically to treatment.

*Bauer*, 532 F.3d at 609 (citation omitted); *accord Singletary v. Bowen*, 798 F.2d 818, 821 (5th Cir. 1986) ("While the mere existence of symptom-free periods may negate a finding of disability when a physical impairment is alleged, symptom-free intervals do not necessarily compel such a finding when a mental disorder is the basis of the claim." (quotation omitted)). Aside from the ALJ's comment that Mace appears able to sustain work "until she has a brief decompensation (approximately every two years per self-report)," the decision treats Mace's mental impairments as essentially consistent in their effects between such periods of decompensation.

But the opinions of Dr. Vandewalle, Dr. Cerjan, and Dr. Mannis, the self-reporting of Mace, and the hospital treatment notes all reflect the episodic nature of the disability that Mace alleges. Similarly, all of these sources reflect that Mace experiences good days and bad days—indeed, some very bad days. So the various doctors' opinions that Mace can, at times, follow instructions, maintain

14

concentration, and stay on task are not necessarily inconsistent with the opinion of Dr. Vandewalle that Mace cannot always follow instructions, maintain concentration, and stay on task.  Nor is the fact that Mace sometimes has good days and even good periods of time inconsistent with the assessments of all of the doctors and the hospitals that Mace has periodic episodes of decompensation. Moreover, Dr. Vandewalle had treated Mace for her bipolar disorder and other mental impairments since 2007, so he was in the best position to give a "detailed, longitudinal picture" of Mace's medical impairments and a unique perspective on the medical evidence.  *See* 20 C.F.R. § 404.1527(c)(2).

As for Dr. Vandewalle's opinion with respect to Mace's concentration, persistence, or pace, the ALJ discounted that opinion, relying on Dr. Cerjan's statement that Mace was not "currently depressed to the point that her concentration and pace may be decreased," but, significantly, she omitted the reference to "currently."  Again, this ignores the episodic nature of the disability. *See Bauer*, 532 F.3d at 609.  Nor do the limitations Mace experiences during a depressive phase necessarily translate into limitations she experiences during a manic phase, particularly as it relates to concentration, which, according to Social Security regulations, can be characterized by "[h]yperactivity," "[f]light of ideas," and "[e]asy distractability."  *See* 20 C.F.R. § 404, Subpt. P., App. 1, Listing 12.04. To the extent that the ALJ found it inconsistent for Dr. Vandewalle to conclude

15

that Mace "at times has significant difficulty remembering work-like procedures and can be distracted by others when attempting ordinary tasks," but "at other times she can concentrate for short periods," we find no inconsistency in these opinions. Rather, these statements are a reflection of the episodic nature of the alleged mental impairments. Similarly, the fact that Mace "reported that she finished things she started"—a comment exceedingly general and devoid of context—does not undermine Dr. Vandewalle's opinion, particularly when, for instance, Mace also reported having trouble concentrating for more than five to ten minutes at a time.

The remainder of Dr. Vandewalle's assessment appears to be consistent with Dr. Mannis's conclusion that Mace "will excel with scripted or predetermined interactions. She appears capable of simple highly supervised activities [and] does not appear capable of extensive social interaction or limited independent decision-making . . . ." Dr. Cerjan's statements were slightly more positive about Mace's ability to work, but even then, Dr. Cerjan stated no more than that Mace could adapt to work-related stress for "short periods of time." The ALJ specifically gave little weight to Dr. Mannis's conclusion, finding that it was inconsistent with contemporaneous Georgia Pines treatment notes, which we address below.

Aside from Mace's self-reporting of her daily activities, the "overall evidence" in the record that the ALJ found inconsistent with the opinion of Dr.

16

Vandewalle appears to have consisted primarily of treatment notes from Georgia Pines.  The treatment notes indicate that Mace had mild to moderate bipolar symptoms, and they contain remarks from Mace and physicians on particular dates indicating that she was doing "okay" with her medication (January 2011), that she was "doing alright" (February 2012), that her overall mood was good (August 2011), that she was stable (October 2011 and January 2012), that her medication managed her acute symptoms (August 2011), and that she was not having mood swings as much (February 2012).  The notes also indicate that Mace was assessed GAF scores ranging from 30 to 70.

On the other hand, these same notes contain entries such as "appeared restless and preoccupied" (August 2011), "still hearing the voices," "mumbling, 'I'm no good,'" and "my friend took my medicines" (October 2011), "I'm having a hard time establishing whether the voices are real or not" (March 2012), "I have my ups and down days" (February 2012), and "Teresa reports she has been having thoughts of harming herself" (May 2011).  In other words, the treatment notes reflect that, consistent with the opinions expressed by Dr. Vandewalle, Mace has good and bad days.  There is nothing about the fact that the Georgia Pines treatment notes reflect that Mace has good days that somehow contradicts Dr. Vandewalle's opinions that Mace also has bad days.

17

According to Social Security Ruling 85-15 concerning the evaluation of mental impairments not of listing severity,

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

SSR 85-15, 1985 WL 56857 (Jan. 1, 1985). Dr. Vandewalle gave his opinion with respect to these factors, and his opinion was entitled to controlling weight unless "good cause" was shown. Based on our review of the evidence in the record and the reasons given by the ALJ, we find that the ALJ's stated rationale did not support giving "little weight" to Dr. Vandewalle's medical opinion. As a reviewing court, we cannot say "that the proper legal analysis has been conducted," *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citation and quotation marks omitted), or that the ALJ's review took into account and evaluated the record as a whole, *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Therefore, we vacate the district court's judgment affirming the Commissioner with instructions to reverse the Commissioner's denial of benefits and return the case to the Social Security Administration for further

18

proceedings consistent with this opinion, including consideration of, among other things, the evidence submitted by Mace to the Appeals Council after the ALJ's decision.

In doing so, however, we do not opine on whether Mace, in fact, has a disability. Instead, we simply direct the district court to remand to the Social Security Administration to consider, in determining whether Mace has a disability, the effects of the stresses of a work environment on Mace and of the episodic nature of the disability alleged.

**VACATED AND REMANDED.**