In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 21-1624

TRISHA K. REYNOLDS,

*Plaintiff-Appellant*,

*v.*

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

*Defendant-Appellee*.

———————

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:19-cv-00443 — **Joseph S. Van Bokkelen**, *Judge*.

———————

ARGUED JANUARY 20, 2022 — DECIDED FEBRUARY 1, 2022

———————

Before ROVNER, BRENNAN, and ST. EVE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. Trisha Reynolds applied for Social Security disability benefits, asserting that she cannot work because of migraines, depression, and difficulty regulating her emotions in social settings. After her claim was administratively denied, an administrative law judge ("ALJ") reviewed her claim and concluded that Reynolds's impairments did not render her disabled. The Social Security Appeals Council

denied her request for review, and the district court held that the ALJ's decision was supported by substantial evidence.

In this appeal, Reynolds argues that the ALJ erred by failing to include a qualitative interaction limitation in her residual functional capacity determination. We disagree. No medical evidence called for a qualitative interaction limitation, and the ALJ was not required to intuit such a limitation from the administrative record. Because substantial evidence supports the ALJ's decision, we affirm.

## I. Background

Trisha Reynolds was born in 1992, graduated from high school, and previously worked part-time in retail. Reynolds suffers from a variety of ailments, including migraines, vertigo, and "major depressive disorder, recurrent moderate with anxious distress." She applied for disability benefits on September 25, 2017. Although Reynolds initially alleged a disability onset date of March 12, 2006, she amended her onset date to the date of her application. Her application was denied initially and on reconsideration. She then received a hearing before an ALJ.

At the hearing, Reynolds testified that she suffers from back pain, vertigo, and migraines, and she cannot stand for more than ten minutes. Her parents handle chores around the house. When asked whether any of her conditions affect her ability to work, Reynolds responded: "Part of my migraine dizziness, vertigo [sic] if I get too hot or the weather changes, I get, like, muscle weakness all over. I can't walk. I can't stand, sit. … I can't write." She testified that she has migraines every day, and each migraine lasts approximately half an hour to an hour. She previously took various prescription medications

for her migraines, but she stopped taking some because of their side effects. According to Reynolds, she quit her job at Walmart because of her migraines. When she drives, she always has someone with her in the car "in case I get a migraine, lightheaded, [or] dizziness." In terms of her mental health, Reynolds testified that she had never gone to an emergency room or crisis center for mental health treatment. She suffers from anxiety when she is around "a whole bunch of people," which she defined as "more than five people." At the time of the hearing, she was taking medication for her mental health conditions.

The ALJ concluded that Reynolds was not disabled under the Social Security Administration's five-step method. First, the ALJ concluded that Reynolds was not engaged in substantial gainful activity because she had not worked since September 25, 2017, the alleged disability onset date. *See* 20 C.F.R. § 404.1520(b). Second, the ALJ concluded that Reynolds suffered from the following severe impairments: migraine headaches and "major depressive disorder, recurrent moderate with anxious distress." *See id.* § 404.1520(c). Third, the ALJ concluded that Reynolds's impairments did not meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1. *See id*. § 404.1520(d).

The ALJ then determined that Reynolds had the residual functional capacity ("RFC") to perform a full range of work with the following non-exertional limitations:

> can never climb ladders/ropes/scaffolds; and not even moderate exposure to moving machinery, unprotected heights, or extreme heat. Work with a moderate level of noise. With work that can be learned in thirty (30) days or less, with

> simple    routine    tasks,    routine    workplace
> changes, and *occasional interaction with co-work-*
> *ers and supervisors, but no interaction with the gen-*
> *eral public*. The claimant is capable of remaining
> on task in two-hour increments.

The ALJ concluded that, while Reynolds does have medically
determinable impairments, "a careful review of the record
does not document sufficient medical evidence to substanti-
ate the severity of the pain and degree of functional limita-
tions alleged by the claimant." Of particular relevance to this
appeal, "[t]he record shows minimal behavioral health treat-
ment from September 2017 to [the] present." Although there
was evidence that Reynolds "occasionally exhibits anger
and/or frustration," the record as a whole showed that she is
"cooperative, alert, oriented, [and] exhibits appropriate mood
and affect." The ALJ observed that the RFC took Reynolds's
social anxiety into account "by finding her capable of *occa-*
*sional* interaction with co-workers and supervisors and no in-
teraction with the general public."

Notably, the ALJ rejected three state agency consultants'
opinions that were unfavorable toward Reynolds's physical
and mental impairments. The ALJ found that, contrary to
those opinions, Reynolds's migraines and depression consti-
tuted severe impairments. The ALJ found only one state
agency consultant's opinion persuasive: that of B. Randal
Horton, Psy.D. Dr. Horton opined that Reynolds was capable
of unskilled work and could respond appropriately to "brief
supervision and interactions [with] co-workers in work set-
tings." The ALJ determined that Dr. Horton's opinion was
consistent with the medical record and warranted some RFC
restrictions. By comparison, the ALJ found the opinion of

Leslie Predina, Ph.D. "mostly unpersuasive." Dr. Predina believed that Reynolds "will likely struggle to get along with her supervisors and coworkers due to her mental health issues." The ALJ found Dr. Predina's opinion on this point "vague" and speculative.

Fourth, the ALJ concluded that Reynolds had no past relevant work. *See* 20 C.F.R. § 404.1520(e). Fifth, the ALJ concluded that suitable jobs existed in significant numbers in the national economy, in light of Reynolds's age, education, work experience, and RFC. *See id*. § 404.1520(f). For purposes of step 5, a vocational expert testified at the hearing that an individual with Reynolds's characteristics could perform jobs such as hand packager and collator. The Appeals Council denied Reynolds's request for review, and Reynolds timely filed a complaint in the district court. 42 U.S.C. §§ 405(g), 1383(c)(3).

The district court affirmed the ALJ's unfavorable decision. The court considered and rejected Reynolds's argument that the ALJ failed to properly consider her mental limitations in the RFC analysis: the ALJ need not have imposed "qualitative" limitations on Reynolds's interactions with supervisors and coworkers, and substantial evidence supported the ALJ's RFC determination. Specifically, the ALJ relied on Dr. Horton's opinion that Reynolds could "respond appropriately to *brief* supervision and interactions [with] coworkers in work settings."

## II. Discussion

We review the district court's affirmance of the ALJ's decision de novo and ask whether substantial evidence supported the ALJ's decision. *Arnold v. Saul*, 990 F.3d 1046, 1047

(7th Cir. 2021). Substantial evidence means "evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks omitted). We "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Rather, this court asks whether the ALJ's decision "reflects an adequate logical bridge from the evidence to the conclusions." *Id*.

An ALJ assesses a claimant's RFC between steps three and four of the five-step method for disability claims. *See* 20 C.F.R. § 416.945(a). When conducting the RFC analysis, "an ALJ must include all of a claimant's limitations supported by the medical record." *Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021) (citing *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014)). Crucially, however, an ALJ need only include limitations that are supported by the medical record. *See, e.g.*, *Deborah M.*, 994 F.3d at 791 (concluding the ALJ properly omitted manipulative limitation from RFC because "[n]o doctor who addressed Plaintiff's carpal tunnel syndrome ever deemed it a manipulative limitation").

We agree with the district court and the Commissioner that Reynolds's case is distinguishable from the unpublished district court opinions she cites in her briefs, which have no precedential value.[1] In those cases, there was medical evidence in the administrative record that a state agency

---

[1] *See Hurley v. Berryhill*, No. 1:17-CV-421-TLS, 2018 WL 4214523, at *3–4 (N.D. Ind. Sept. 5, 2018); *Wartak v. Colvin*, No. 2:14-CV-401-PRC, 2016 WL 880945, at *6–7 (N.D. Ind. Mar. 8, 2016); *Gidley v. Colvin*, No. 2:12-CV-374-APR, 2013 WL 6909170, at *11–12 (N.D. Ind. Dec. 30, 2013).

consultant believed the claimant should receive a "superficial" interaction limitation in his or her RFC assessment. The district courts in those cases remanded to the ALJ because the ALJ failed to explain why he or she had not included such a limitation in the RFC analysis.

Here, there is no such evidence of a qualitative interaction limitation in Reynolds's medical records. Instead, she asks the court to intuit a qualitative limitation from Dr. Predina's opinion that Reynolds "will likely struggle to get along with her supervisors and coworkers due to her mental health issues." But the ALJ explained that she found Dr. Predina's opinion on this point speculative and therefore unpersuasive. In order to conclude that Dr. Predina's opinion provided a basis for a qualitative limitation, this court would have to reweigh the evidence, contrary to well-settled case law on the standard of review for Social Security appeals. *See, e.g., Gedatus*, 994 F.3d at 900.

Similarly, Reynolds asks us to infer that Dr. Horton's opinion required a qualitative interaction limitation. To recap, Dr. Horton opined that Reynolds could handle "brief supervision and interactions [with] coworkers in a work setting." Reynolds's argument with respect to Dr. Horton's opinion fails for the same reason as her argument regarding Dr. Predina's opinion: neither physician recommended that Reynolds's RFC be limited to "superficial" interactions with supervisors and coworkers. *See Gedatus*, 994 F.3d at 904 ("A fundamental problem is [claimant] offered no opinion from any doctor to set [] limits … greater than those the ALJ set."); *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) ("[T]here is no doctor's opinion contained in the record which indicated greater limitations than those found by the ALJ.").

Essentially, Reynolds argues that the ALJ should have weighed the evidence differently and imposed an additional limitation on her RFC. She points to notes from a clinician on August 30, 2017, when she reported the following symptoms: "aggressive or violent behavior, decreased energy, relationship problems, sleep disturbances, and suicidal thinking/history of attempt(s)." At appointments on March 29, 2019, and April 12, 2019, another practitioner noted that Reynolds has "difficulty managing emotional responses to frustration" and "can become angry or annoyed quickly." None of these observations, however, amount to medical evidence that Reynolds's RFC should have included a qualitative interaction limitation. The ALJ was not required to impose such a limitation in the RFC, much less explain her decision not to. Put another way, evidence that Reynolds sometimes struggles to interact appropriately with others does not mean an occasional interaction limitation was insufficient in this case. Indeed, the ALJ's determination that Reynolds could handle "occasional" interactions with supervisors and coworkers "but no interaction with the general public" is consistent with Reynolds's testimony that she gets anxious when she is around "more than five people."

According to Reynolds, the *Dictionary of Occupational Titles* ("DOT") defines "occasional" to mean one-third of the workday. From there, Reynolds argues that "occasional" interaction means she might have to interact with coworkers for up to two hours and forty minutes out of an eight-hour workday. Reynolds's argument is misleading because the DOT definition does not refer to interactions with others; instead, it refers to the frequency with which an employee would have to exert

various amounts of physical force.[2] She cites no other support for the notion that the ALJ's RFC would require her to interact with supervisors and coworkers for up to two hours and forty minutes per day. Moreover, her cited authority for the meaning of "superficial" is *Merriam-Webster's Dictionary*, not the DOT, suggesting that the distinction she draws between "occasional" and "superficial" may not matter for purposes of the RFC analysis.[3]

### III. Conclusion

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

[2] *See Dictionary of Occupational Titles*, App'x C at *4 (4th ed. 1991), https://www.lb7.uscourts.gov/documents/4-12-CV-075.2.pdf.

[3] *But see Wartak*, 2016 WL 880945, at *7 ("'Occasional contact' goes to the quantity of time spent with the individuals, whereas 'superficial contact' goes to the quality of the interactions."). *Wartak* does not cite case law or regulations in support of this distinction, and in any event, *Wartak* is merely persuasive authority in this court.