In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 22-2694

TODD HESS,

*Plaintiff-Appellant,*

*v.*

MARTIN J. O'MALLEY, Commissioner of Social Security,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:21-cv-00114 — **James D. Peterson**, *Chief Judge.*

———————————

ARGUED NOVEMBER 29, 2023 — DECIDED FEBRUARY 7, 2024

———————————

Before RIPPLE, SCUDDER, and JACKSON-AKIWUMI, *Circuit Judges.*

RIPPLE, *Circuit Judge.* The Social Security Administration awarded Todd Hess, 46, supplemental security income and disability insurance benefits but denied his claim for disabled adult child benefits. Disabled adult child benefits allow a disabled adult child of a retired, disabled, or deceased wage earner to receive, in certain cases, benefits on a parent's account. To be eligible, Mr. Hess had to establish, among other

things, that he had a disability that continued unabated from before his 22nd birthday (August 8, 1999) until the filing of his application for benefits on February 7, 2016. Mr. Hess submitted that depression, panic disorder, obsessive-compulsive disorder, and other impairments rendered him disabled during that entire period.

After a hearing, and again after a second hearing,[1] an ALJ disagreed. The ALJ concluded that, although Mr. Hess had established that he was disabled as of June 9, 2009, he had not established that he was disabled before then. The ALJ based his decision on gaps in Mr. Hess's treatment history, notes from Mr. Hess's physicians during visits punctuating those gaps, and intermittent independent-contractor work performed by Mr. Hess. After the Appeals Council did not assume jurisdiction, the district court concluded that the ALJ's decision was supported by substantial evidence. We agree and accordingly affirm the judgment of the district court.

# I

# BACKGROUND

## A.

Mr. Hess's difficulties began at a young age and, at 8 years old, he began attending classes for those with learning disabilities. He was diagnosed with attention deficit disorder, dyslexia, and depression. At 13, he began having panic attacks. His panic attacks were typically accompanied by severe anxiety, rapid heartbeat, shallow breathing, and minor

---

[1] The intermediate procedural path will be explained in more detail later in this opinion.

perceptual distortions such as seeing things "in a fog."[2] In high school, Mr. Hess had "several close friends," "enjoy[ed] socializing," and had a long-term girlfriend.[3] But he also struggled with depression, panic attacks, and obsessive-compulsive disorder ("OCD"), and he missed a lot of school as a result. When Mr. Hess was 17, he met with Dr. Mark Moffet, who diagnosed him with partial panic disorder and, at a later visit, OCD. Mr. Hess eventually graduated high school, moved into an apartment with a roommate, and briefly attended trade school.

In November 1998, when he was 21, Mr. Hess again met with Dr. Moffet after a gap in treatment lasting more than two and a half years. Dr. Moffet concluded that Mr. Hess "no longer qualifie[d] for the diagnosis of major depression" and that he was "generally functioning quite well."[4] Mr. Hess's OCD symptoms, however, had "continued and [were] impairing to him in daily life."[5] These are the last medical records dated prior to Mr. Hess's 22nd birthday in August 1999.

Mr. Hess's impairments persisted. In November 2001, at his first meeting with Dr. Moffet in three years, Mr. Hess reported "significant worsening of his condition," primarily on account of an irrational fear of germs.[6] He saw Dr. Moffet a

---

[2] AR 604.

[3] AR 576.

[4] AR 584.

[5] AR 586.

[6] AR 588–89.

few more times over the course of the next year (through November 2002), but he did not see him again after that until April 2004. At that April 2004 appointment, which would be his last appointment with a mental health professional for over three years, Mr. Hess reported anxiety, germ phobia, and bulimia. Mr. Hess and his mother would later testify that he did not seek more frequent treatment because he was uninsured and unable to afford it. For work in his twenties, Mr. Hess sold shoes, clothing, sunglasses, and skateboards as an independent sales representative. This job required frequent travel, which was difficult for him, given his impairments.[7] On the personal side, Mr. Hess maintained social relationships, dated regularly, and got married.

In May 2007 (at 29), Mr. Hess established care with Dr. Richard Stafford, in part because of a panic attack that lasted about 24 hours. During his initial appointment, Mr. Hess was "extremely anxious," but he "den[ied] major symptoms of biologic depression" and stated that his OCD was "quite livable" and "[did] not interfere with his life."[8] Mr. Hess continued to see Dr. Stafford after that initial appointment, generally reporting insomnia, depression, stress related to his marriage, and (at times) panic attacks. He continued to work as an independent sales representative and traveled for that job. At some point, he and his wife separated. As explained further below, the parties now agree that Mr. Hess has been disabled since June 2009.

_____

[7] The ALJ determined that this work did not rise to the level of "substantial gainful activity."

[8] AR 604–05.

**B.**

In February 2016 (at 38), Mr. Hess applied for supplemental security income ("SSI"), disability insurance benefits on his own account, and disabled adult child benefits on his mother's account. The Social Security Administration ("SSA") approved his SSI claim, but denied, at the initial and reconsideration stages, his claims for disability insurance benefits and disabled adult child benefits. At the initial stage, Dr. Frank Orosz, a state-agency physician, reviewed Mr. Hess's medical records. He concluded that Mr. Hess was disabled as of October 2015, but not before. At the reconsideration stage, Dr. Deborah Pape, another state-agency physician, also reviewed Mr. Hess's records, considering only the August 1999–December 2009 period. Dr. Pape concluded that Mr. Hess was not disabled during that time period.

An ALJ conducted a hearing in December 2018. Mr. Hess testified, answering questions from the ALJ and his mother, who acted as his non-attorney representative. Mr. Hess's mother also testified, speaking to the "major impediments" Mr. Hess had dealt with "his whole life."[9] A vocational expert gave testimony about jobs available to similarly situated individuals. The ALJ also considered evaluations from Mr. Hess's middle school years, documentation of Mr. Hess's education and work history, documentation from his visits with Dr. Moffet and Dr. Stafford, documentation from his visits with various physicians from 2009 on, and Dr. Orosz's and Dr. Pape's opinions.

---

[9] AR 163.

In February 2019, the ALJ issued two decisions, neither of which is under review in this appeal. In those decisions, the ALJ determined that Mr. Hess became disabled in June 2009 but was not disabled before. One decision concerned his application for disability insurance benefits. In that decision, the ALJ explained that Mr. Hess was eligible for those benefits because his last insured date was in December 2009. In the other decision, the ALJ determined that Mr. Hess was not eligible for disabled adult child benefits because Mr. Hess had not been under a disability for the entire period from before his 22nd birthday (in August 1999) to the filing of his application (in February 2016).

After SSA's Appeals Council denied his request for review, Mr. Hess sought further review in the district court, but, after Mr. Hess filed his opening brief and before the Government filed a brief, the parties stipulated to a remand to the ALJ. The Appeals Council, informed of the remand stipulation, identified several issues with the ALJ's initial decision for the ALJ to address on remand. First, the Appeals Council noted that the ALJ had said that Mr. Hess had "marked" limitations in concentration, persistence, or pace, but he had not explained his reasons for finding this limitation. In the Appeals Council's view, a basis for those limitations did not appear in any of the experts' opinions, and, moreover, the limitations did not seem to correspond to the ALJ's description of Mr. Hess's residual functional capacity ("RFC").[10] Second, the Appeals Council noted that, although the ALJ gave significant

---

[10] In his later decision, the ALJ explained that the "marked" designation was simply a drafting error. The ALJ had meant to state that Mr. Hess had "moderate" limitations, not "marked" limitations, in that category.

weight to Dr. Orosz's and Dr. Pape's opinions, he disagreed, without giving reasons, with many limitations that those experts offered. Third, the Appeals Council stated that the ALJ "may want to consider any explanations for the gaps in treatment before inferring that they weighed against the accuracy of [Mr. Hess's] subjective complaints."[11]

On remand, the ALJ held another hearing. Mr. Hess was represented by counsel at that hearing. Mr. Hess testified that, although at the time of the second hearing his symptoms were "extremely bad," they were "definitely more difficult" prior to June 2009.[12] He stated: "[A]s I'm older, there are things that I can do now, that I couldn't do in my teenage, early 20 years."[13] Mr. Hess's mother and a vocational expert also testified.

In October 2020, after the second hearing, the ALJ issued the decision now under review. Speaking to the relevant period prior to June 2009, he found that Mr. Hess did not engage in substantial gainful activity in that period (step one in the five-step inquiry prescribed in the agency's regulations) and that he had a severe impairment (step two). He also found that Mr. Hess did not have a listed impairment (step three). Before proceeding to step four, the ALJ set forth the following RFC:

> prior to attaining age 22 through June 8, 2009, the claimant had the residual functional

---

[11] AR 1622.

[12] AR 1392.

[13] AR 1413.

capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: he is limited to understanding, remembering & carrying out simple instructions and routine tasks . . . with only simple work-related decisions or judgments. He is limited to a work environment with no fast paced production quota or rate (any production requirements should be more goal oriented, such as based on a daily or weekly or monthly quota rather than assembly line work or other similar work). He is limited to work environments with no interaction with the general public, only occasional, brief and superficial interactions with co-workers and only occasional interactions with supervisors.[14]

The ALJ arrived at that RFC by relying on the notes from Mr. Hess's treating physicians during the 1999–2009 period, on the state-agency physicians' findings based on those notes, on the work that Mr. Hess had performed in that period, and to a lesser extent, on Mr. Hess's testimony regarding his subjective symptoms. The ALJ added that he also relied on the many gaps in Mr. Hess's treatment, not as indication of improvement in symptoms or of a lack of credibility, but instead as an indication of "an absence of objective evidence."[15] Next, at step four, the ALJ determined that Mr. Hess had no past relevant work. Finally, the ALJ found that there were jobs that

---

[14] AR 1342.

[15] AR 1351.

existed in significant numbers in the national economy that Mr. Hess could have performed in the relevant period (step five), including jobs as a packager, cleaner, and dishwasher or kitchen helper. Based on these findings, the ALJ concluded that Mr. Hess "was not under a disability . . . at any time prior to attaining age 22 through June 8, 2009."[16] Mr. Hess did not file exceptions with the Appeals Council, and the Appeals Council did not assume jurisdiction, so the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.984(d).

Mr. Hess again sought review in the district court. He contended that the ALJ improperly discounted Dr. Orosz's opinion, improperly assessed Mr. Hess's subjective symptoms, and improperly failed to explain his determination of Mr. Hess's RFC. The district court did not accept these arguments. It held that the ALJ did not err in assessing Dr. Orosz's opinions, reasoning that Mr. Hess had not attempted to resolve inconsistencies that the ALJ identified in those opinions and that Mr. Hess did not explain why further exploration of Dr. Orosz's "vague" statements would be productive. It further held that the ALJ's assessment of Mr. Hess's subjective symptoms was not "patently wrong," given the lack of corroborating evidence for much of the lengthy period over which he had to prove a disability. Finally, the district court held that the ALJ did not improperly fail to explain Mr. Hess's RFC. The district court accordingly affirmed the Commissioner's decision. Mr. Hess appealed.

---

[16] AR 1361.

## II

## DISCUSSION

"We will uphold the ALJ's decision if it uses the correct legal standards, is supported by substantial evidence, and builds an accurate and logical bridge from the evidence to the ALJ's conclusion." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) (cleaned up).

## A.

In this appeal, Mr. Hess challenges the ALJ's October 2020 decision. In that decision, the ALJ both denied Mr. Hess's claim for disabled adult child benefits and found a disability onset date for his disability insurance benefits award that was later than the date Mr. Hess had alleged. Mr. Hess focuses on the denial of disabled adult child's benefits, a type of child's insurance benefits. Child's insurance benefits have been available since the earliest days of social security. *See* Social Security Act Amendments of 1939, Pub. L. No. 76-379, § 202(c), 53 Stat. 1360, 1364. Under child's insurance benefits, when a wage earner who has paid the requisite amount of social security taxes retires or becomes disabled, SSA will pay benefits not only to the wage earner but also to the wage earner's minor children. *See* 42 U.S.C. § 402(d); Thomas E. Bush, 1 Social Security Disability Practice § 141, 1-38 (2d ed. 2020). In addition, when the wage earner dies, minor children can receive benefits. § 402(d). A minor child can receive child's insurance benefits until age 18, or, in some cases, until age 19. *Id.* A minor child need not be disabled to obtain these benefits. *Id.*

In 1956, Congress extended these benefits to disabled adult children. *See* Social Security Act Amendments of 1956, Pub. L. No. 84-880, § 101, 70 Stat. 807, 807. Accordingly, a

disabled adult child of a retired, disabled, or deceased wage earner can, in certain cases, receive the same type of benefits that a minor child of a retired, disabled, or deceased wage earner would receive. *See* § 402(d)(1); Bush, *supra*, § 141, 1-39. Eligibility for these benefits is limited, however, in one critical respect: It is not sufficient for an adult applicant to show a disability at the time of the application and to satisfy the requirements applicable to minor applicants (being unmarried and the child of and dependent on a qualified insured person, *see* § 402(d)). An adult applicant must also show that he or she had a disability that continued unabated from before the applicant's 22nd birthday to the time of the filing of the application. *See Smolen v. Chater*, 80 F.3d 1273, 1280 (9th Cir. 1996) (collecting cases); *Reading v. Mathews*, 542 F.2d 993, 997 (7th Cir. 1976).[17]

The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d). In determining whether a claimant is or was disabled, ALJs undertake a five-step inquiry into:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments

---

[17] *See also* S. Rep. No. 84-2133, at 5 (1956) (expressing intent to benefit the individual and the caregivers of the individual "who because of a mental deficiency never grows up, or who because of a physical impairment requires constant care throughout his life").

listed by the [Commissioner] . . . ; (4) whether
the claimant can perform [his] past relevant
work; and (5) whether the claimant is capable of
performing work in the national economy.

*Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001) (quoting
*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000)); *see* 20 C.F.R.
§ 404.1520. "[I]f the ALJ can make a conclusive finding at any
step that the claimant either is or is not disabled, then she
need not progress to the next step." *Young v. Barnhart*, 362
F.3d 995, 1000 (7th Cir. 2004).

### B.

Mr. Hess challenges the ALJ's evaluation of Dr. Orosz's
findings and the ALJ's evaluation of his subjective symptoms.
We will examine each of his challenges in turn.

### 1.

Mr. Hess raises several challenges to the ALJ's evaluation
of Dr. Orosz's findings. Mr. Hess first focuses on Dr. Orosz's
checkbox findings that he was "moderately limited" in his
ability to (1) "maintain attention and concentration for ex-
tended periods," (2) "perform activities within a schedule,
maintain regular attendance, and be punctual within custom-
ary allowances," and (3) "complete a normal workday and
workweek without interruptions from psychologically based
symptoms and to perform at a constant pace without an un-
reasonable number and length of rest periods."[18] Mr. Hess
submits that the ALJ erred in failing to incorporate these lim-
itations into the RFC.

---

[18] *See* AR 188–90, 205–07.

We cannot accept this contention. The RFC did account for these limitations. It recited that Mr. Hess was "limited to a work environment with no fast paced production quota or rate" and that "any production requirements should be more goal oriented, such as based on a daily or weekly or monthly quota."[19] In such an environment, it would be less important for Mr. Hess to stay concentrated or on schedule because his productivity would be measured against meeting goals. Further, because the RFC limits Mr. Hess to work that is not "fast paced," the environment would be even more responsive to Mr. Hess's limitations. Moreover, when we recall that Dr. Orosz rated those limitations merely "moderate" rather than "marked," the ALJ properly accounted for Dr. Orosz's "moderate limitations" findings.[20]

Mr. Hess next focuses on Dr. Orosz's narrative statements that he "[m]ay have di[ff] with conc & attn" and that he "[m]ay have diff w/ stress & change."[21] Mr. Hess submits that the ALJ should have incorporated those statements into his RFC. We cannot agree. As the ALJ noted, these notations were

---

[19] AR 1342.

[20] *See Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) ("[T]he ALJ reasonably relied on the narrative RFC because it was in fact consistent with the 'moderate' checklist ratings. . . . A 'moderate limitation' is defined by regulation to mean that functioning in that area is 'fair.' 20 C.F.R. Pt. 404, Subpt. P, App. 1. As the Commissioner points out, 'fair' in ordinary usage does not mean 'bad' or 'inadequate.'").

[21] AR 190, 207.

vague and not necessarily helpful.[22] Nor can we say that the ALJ was required to probe further into what Dr. Orosz meant by those statements. ALJs have a "duty to develop a full and fair record" in social security cases. *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). But the duty is lower when the claimant is represented by counsel, and in all cases, "the reviewing court defers to the ALJ on the question of how much evidence must be gathered." *Bertaud v. O'Malley*, 88 F.4th 1242, 1245 (7th Cir. 2023). Mr. Hess had not one but two hearings, and he was represented by a non-attorney representative at one and an attorney at the other. The vague and tentative nature of Dr. Orosz's statements simply reflect the difficulty of opining on a period spanning over 16 years, given a record with so many significant gaps. The ALJ was entitled to conclude that it would not have been productive to ask another expert to review Mr. Hess's decades-old records and clarify Dr. Orosz's statements.

Mr. Hess also contends that the ALJ, without explanation, gave Dr. Orosz's assessment "significant" weight in one of his earlier decisions but only "little" weight in his later decision.[23] We cannot accept this characterization of the ALJ's decisions. In one of his February 2019 decisions, the ALJ gave "significant" weight to Dr. Orosz's specific findings of medical non-compliance and improvement in symptoms before Mr. Hess reached age 22 but did not give much weight to Dr. Orosz's

---

[22] *See Leisgang v. Kijakazi*, 72 F.4th 216, 221 (7th Cir. 2023) (ALJ not required to adopt the "precise wording" of physician's "vague" statements).

[23] Hess Br. 43.

findings regarding the overall period at issue.[24] In his October 2020 decision, the ALJ did not address specifically the findings of medical noncompliance and improvement, but he did say that he gave Dr. Orosz's findings for the overall period "little" weight.[25] A closer examination of the ALJ's decisions therefore reveals no significant modification in the weight attributed to Dr. Orosz's assessment.

## 2.

Mr. Hess's other objections to the ALJ's decision focus on the ALJ's evaluation of his subjective symptoms. He first contends that the ALJ improperly discounted his subjective symptoms. We will overturn the ALJ's evaluation of a claimant's subjective symptoms only if it is "patently wrong, which means that the decision lacks any explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014).

The ALJ reasonably concluded that Mr. Hess's descriptions of his symptoms between 1999 and 2009 were only partially consistent with the evidence. The treatment notes of many of Mr. Hess's physicians (including notes stating that he was "generally functioning quite well" and that his OCD "did not interfere with his life"[26]) support the conclusion that his alleged impairments were not disabling. In determining that Mr. Hess could have worked in the less demanding environment of the sort described in the RFC, the ALJ also

---

[24] AR 1555.

[25] AR 1352 (emphasis removed).

[26] AR 584, 604.

reasonably relied on the extensive travel that Mr. Hess did for his work.

Mr. Hess also submits that the ALJ's reliance on the gaps in his treatment violated Social Security Ruling 16-3p. That ruling provides, in relevant part, that an ALJ may discredit an individual's subjective complaints regarding the intensity and persistence of symptoms "if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints." SSR 16-3p, 82 Fed. Reg. 49,462, 49,466 (Oct. 25, 2017). But an ALJ should "not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not . . . seek treatment consistent with the degree of his or her complaints." *Id.* According to Mr. Hess, the ALJ failed to account for his and his mother's testimony that the reason he did not seek more frequent treatment was not that his symptoms were in remission, but that he was uninsured and could not afford the treatment.

We do not agree that the ALJ failed to account for this testimony and thereby violated SSR 16-3p. The ALJ did not rely on the gaps in Mr. Hess's treatment for the inference that Mr. Hess's symptoms were in remission. Instead, for the ALJ, the gaps simply underscored Mr. Hess's failure to carry his burden on his disabled adult child benefits claim of proving that he was disabled for the vast period from before Mr. Hess's 22nd birthday (August 8, 1999) to the filing of his application on February 7, 2016. In evaluating the many lengthy gaps between Mr. Hess's visits, the ALJ did not have before him any corroborating evidence regarding the seriousness of Mr. Hess's symptoms during those gaps. There were no statements from lay witnesses, such as coworkers, trade

school instructors, friends, or family members other than his mother. Mr. Hess instead rested his case on his and his mother's testimony. This lack of corroboration was particularly material given that, on some visits following a gap in treatment, Mr. Hess reported improvements in symptoms. The ALJ was entitled to consider Mr. Hess's failure to present more evidence on his symptoms during these gaps, without violating SSR 16-3p.

## Conclusion

Because no legal error was committed and the administrative decision is supported by substantial evidence, the district court's decision is affirmed.

AFFIRMED