In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 24-1545

ALICIA RAE PUFAHL,

*Plaintiff-Appellant,*

*v.*

FRANK BISIGNANO, Commissioner of Social Security,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:23-cv-00612-LA — **Lynn Adelman**, *Judge.*

_____

ARGUED NOVEMBER 8, 2024 — DECIDED JUNE 24, 2025

_____

Before RIPPLE, HAMILTON, and KIRSCH, *Circuit Judges.*

PER CURIAM. Alicia Rae Pufahl applied for disability insurance benefits from the Social Security Administration in August 2012, claiming that her ability to work was limited by Wegener's granulomatosis, depression, pulmonary disease, back injury, bipolar disorder, and excessive fatigue. She was required to establish disability between her alleged onset of disability on August 8, 2011, and her date last insured, December 31, 2016. Her application was denied initially in

November 2012, and several unfavorable decisions from Administrative Law Judges ("ALJs"), appeals, and remands followed. For our purposes, we need focus only on the most recent ALJ decision concluding that Ms. Pufahl was not disabled during the relevant period, and the district court's opinion affirming the ALJ's decision.[1] The Appeals Council denied further review.[2] Because the district court correctly determined that substantial evidence supported the agency's decision, we affirm its judgment.

## I

## BACKGROUND

Because the ALJ and the district court provided comprehensive factual accounts with which we take no issue, we reference here only those facts critical to our analysis. Under the Social Security Act, a person is considered disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment … which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The administrative regulations set forth a five-step evaluation process to determine whether a claimant is disabled, requiring the ALJ to consider sequentially whether:

> (1) the claimant is presently employed; (2) the claimant has a severe impairment

---

[1] *Pufahl v. O'Malley*, No. 23-C-612, 2024 WL 770694 (E.D. Wis. Feb. 9, 2024).

[2] The Appeals Council found no basis for changing the most recent ALJ decision and declined to assume jurisdiction. The most recent ALJ decision is therefore the Commissioner's final decision. *See* 20 C.F.R. § 404.984(a), (b)(2).

or combination of impairments; (3) the claim-
ant's impairment meets or equals any impair-
ment listed in the regulations as being so severe
as to preclude substantial gainful activity; (4) the
claimant's residual functional capacity leaves
him unable to perform his past relevant work;
and (5) the claimant is unable to perform any
other work existing in significant numbers in the
national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351–52 (7th Cir.
2005) (citing 20 C.F.R. §§ 404.1520, 416.920). Between the third
and fourth steps, the ALJ determines the claimant's residual
functional capacity ("RFC"), see 20 C.F.R. § 404.1520(e), which
is the claimant's maximum work capability. *Elder v. Astrue*,
529 F.3d 408, 412 (7th Cir. 2008) (citing 20 C.F.R. § 404.1520(e)).

Applying this sequential analysis, the ALJ determined
that Ms. Pufahl was not disabled during the relevant time pe-
riod. At the first step, the ALJ concluded that Ms. Pufahl did
not engage in substantial gainful activity during the relevant
period. The ALJ determined at step two that Ms. Pufahl had
the severe impairments of "obesity, fibromyalgia, degenera-
tive disc disease, migraines, Wegener's granulomatosis,
asthma, bipolar disorder, and anxiety."[3] The ALJ concluded
at step three that Ms. Pufahl's impairments did not meet nor
medically equal the severity of one of the listed impairments
in the regulations.

Before proceeding to the fourth step, the ALJ determined
Ms. Pufahl's RFC:

---

[3] A.R. 1333.

> [Ms. Pufahl] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; could never climb ladders, ropes, or scaffolds; must avoid hazards such as unprotected heights, moving mechanical parts, and operating a motor vehicle; could tolerate moderate noise in the work environment and lighting no brighter than in a typical office environment; could tolerate occasional exposure to dust, odors, fumes and other pulmonary irritants; could perform simple and routine tasks; could maintain attention and concentration for two-hour segments; could make simple work-related decisions; could tolerate occasional changes in a routine work setting; and could frequently interact with supervisors and coworkers and occasionally interact with the public.[4]

Relying on the testimony of the vocational expert ("VE") that Ms. Pufahl's past relevant work could not be performed with the described RFC, the ALJ concluded at step four that Ms. Pufahl was unable to perform any past relevant work through the end of the relevant time period. And lastly at step five, the ALJ determined that considering Ms. Pufahl's "age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that

---

[4] *Id.* at 1337.

[she] could have performed."[5] The ALJ therefore concluded that Ms. Pufahl was not disabled.

The district court affirmed this decision. Ms. Pufahl now appeals.

## II

## DISCUSSION

The guardrails governing our review of disability decisions are well-settled. We review de novo the district court's judgment affirming the Social Security Administration's decision. *Grotts v. Kijakazi*, 27 F.4th 1273, 1276 (7th Cir. 2022). We will affirm the denial of "disability benefits when the ALJ follows applicable law and supports its conclusions with substantial evidence." *Id.* (citing 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019)). "'[S]ubstantial evidence' is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Combs v. Kijakazi*, 69 F.4th 428, 434 (7th Cir. 2023) (alteration in original) (quoting *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). "[I]n the disability context, 'the threshold for such evidentiary sufficiency is not high.'" *Sevec v. Kijakazi*, 59 F.4th 293, 298 (7th Cir. 2023) (quoting *Biestek*, 587 U.S. at 103). "We will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

Ms. Pufahl submits three arguments for our consideration. First, she contends that the ALJ improperly weighed medical opinion evidence when calculating her RFC. Second, she

---

[5] *Id.* at 1348.

maintains that the ALJ did not evaluate properly her subjective complaints. Third, she submits that the ALJ's hypothetical question posed to the VE insufficiently described her mental limitations. We will examine in turn each of these issues.

**A.**

We begin with Ms. Pufahl's contention that the ALJ failed to weigh properly the medical opinion evidence. Relevant here, the ALJ gave little weight to the opinions of Ms. Pufahl's neurologist, Dr. Edward Reshel, and to those of Ms. Pufahl's primary care provider, Dr. Andrew Knoernschild. The ALJ assigned some weight to the September 2013 opinion of Ms. Pufahl's psychiatrist, Dr. Todd Boffeli, because the ALJ found that some of the assessments in that opinion were supported by the record evidence. The ALJ gave little weight to Dr. Boffeli's other opinions. Turning to the work of Ms. Pufahl's therapist, Ms. Lonna Kannenberg, LCSW, the ALJ gave some weight to the opinions that he concluded were supported by the evidence, but allotted little weight to the rest of Ms. Kannenberg's assessments.

Ms. Pufahl submits that the opinions of Dr. Reshel, Dr. Knoernschild, and Dr. Boffeli are entitled to controlling weight. As licensed physicians who have treated Ms. Pufahl, Dr. Reshel, Dr. Knoernschild, and Dr. Boffeli qualify as treating sources under the applicable regulations.[6] For claims filed

---

[6] *See* 20 C.F.R. § 404.1527(a)(2) (defining a treating source as an "acceptable medical source" who provides medical treatment or evaluation to the claimant and who has an ongoing treatment relationship with the claimant); *id.* § 404.1502(a)(1) (defining "acceptable medical source" to include licensed physicians).

before 2017, like Ms. Pufahl's, a treating source's medical opinion is entitled to controlling weight if it is "supported by medical evidence and consistent with the record." *Baptist v. Kijakazi*, 74 F.4th 437, 444 (7th Cir. 2023) (citing 20 C.F.R. § 404.1527(c)(2)).[7]

Substantial evidence supports the ALJ's decision to not allot controlling weight to the three physicians' opinions. As the ALJ noted, some of the opinions of Dr. Reshel, Dr. Knoernschild, and Dr. Boffeli are not supported by the record. For example, the ALJ correctly found that "Dr. Knoernschild's opinions included many limitations that are too restrictive given the evidence, including Dr. Knoernschild's own progress notes."[8] As the ALJ described, Dr. Knoernschild's own notes do not indicate that Ms. Pufahl had the significant limitations set forth in his opinions. His opinions are, moreover, inconsistent with other providers' findings that Ms. Pufahl retained many physical abilities. Given the inconsistencies, the ALJ acted within his discretion in discounting these opinions. *See Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019) (citing 20 C.F.R. § 404.1527(c)(2)) (stating that an ALJ may discredit a treating physician's "opinion if it is inconsistent with the record"); *Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021) ("An ALJ may decline to give a treating physician's opinion controlling

---

[7] By contrast, the Social Security Administration does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)" when considering claims filed on or after March 27, 2017. *Id.* § 404.1520c(a).

[8] A.R. 1344.

weight when the opinion is inconsistent with the physician's treatment notes.").

The ALJ further considered speculative the three physicians' opinions about work breaks and absences. This finding is similar to that in *Reynolds v. Kijakazi*, 25 F.4th 470 (7th Cir. 2022), where an ALJ found a state agency consultant's opinion that the claimant would "likely struggle to get along with her supervisors and coworkers due to her mental health issues" to be "speculative and therefore unpersuasive." *Id.* at 474. We declined to conclude that this consultant's opinion provided a basis for the qualitative interaction limitation requested by the claimant. *Id.* at 471, 473–74. We would have had to reweigh the evidence to do so. *Id.* at 474. Accordingly, the ALJ's conclusion that the three physicians' speculative opinions are not worthy of controlling weight must stand.

The ALJ also deemed conclusory "Dr. Reshel's statement that [Ms. Pufahl's] migraines interfered with her ability to engage in competitive employment."[9] He reached the same conclusion with respect to Dr. Knoernschild's statement in his progress notes that Ms. Pufahl "may certainly qualify for disability."[10] The ALJ was on solid ground in discounting these opinions. An ALJ is not required to "give any special significance to the source of an opinion on issues reserved to the Commissioner," which includes opinions about a claimant's

---

[9] *Id.* at 1343.

[10] *Id.* at 1344.

ability to work. 20 C.F.R. § 404.1527(d)(1), (3); *see also Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016).[11]

---

[11] Ms. Pufahl also argues that Dr. Reshel's notes stating that she was doing "very well" and "quite well" do not contradict the treating doctors' medical opinions because "[a] medical condition can be improved or 'doing well' and yet still disabling." Appellant's Br. 40. She relies on our decision in *Bauer v. Astrue*, 532 F.3d 606 (7th Cir. 2008), where we concluded that the ALJ erred in relying on hopeful remarks to discount the treating physicians' opinions, given that the ALJ's reasons for discounting the evidence suggested a lack of understanding of bipolar disorder and there was no indication that the physicians' analyses were flawed. *See id.* at 608–09. We agree with the district court's reasoning in rejecting this argument. *Bauer* is distinguishable from the facts at hand because the ALJ noted other evidence indicating that Ms. Pufahl's migraines were manageable on a more sustained basis. He noted the statements in Dr. Reshel's notes that Ms. Pufahl's "headaches had greatly resolved" and "that Benadryl and Ibuprofen helped to stop the migraines if she took them immediately," which contradicted Dr. Reshel's other opinions. A.R. 1339.

She further submits that the ALJ erred by considering Dr. Reshel's treatment of her migraines with prophylactic medication to be "conservative." Appellant's Br. 40. She also contends that the ALJ erred by "rejecting" Dr. Knoernschild's opinions because she states that fibromyalgia cannot be treated through aggressive means like surgery. *Id.* We find no error with the ALJ's characterization of the treatments at issue as conservative. As the district court noted, the ALJ appeared to consider Dr. Reshel's treatment conservative because Dr. Reshel increased the dosage of the prophylactic medication that Ms. Pufahl was taking for her migraines, rather than trying a new medication or prescribing an abortive medication. Dr. Reshel later noted in March 2021 that Ms. Pufahl's use of other medications was successful. He also then increased the dosage of her prophylactic medication and noted that if that adjustment was not beneficial, they would consider a trial of an injectable inhibitor. Under these circumstances, we see no error in the ALJ's characterization of this particular treatment as conservative. *See Baptist v. Kijakazi*, 74 F.4th 437, 445 (7th Cir. 2023).

( … continued)

The ALJ also noted Dr. Reshel's lack of explanation for his opinions that Ms. Pufahl had limited vision during migraines as well as psychological limitations, and that she needed to avoid fumes, gases, and temperature extremes. The ALJ further expressed concerns about some of Dr. Knoernschild's and Dr. Boffeli's opinions being based primarily on subjective reports. Of similar concern was the unsupported and delayed nature of Dr. Knoernschild's opinion regarding Ms. Pufahl's physical restrictions as of July 2019. These determinations were reasonable given the evidentiary record, and we will not disturb them on appeal.[12]

---

Ms. Pufahl's argument as to Dr. Knoernschild's assessment proceeds on an incorrect assumption. The ALJ stated that Dr. Knoernschild's progress notes documented Ms. Pufahl's reports of a back injury, "largely unremarkable x-rays of [her] lumbar spine[,] and Dr. Knoernschild's recommendation for fairly conservative treatment such as medication and physical therapy." A.R. 1344. The ALJ therefore was commenting on the treatment of Ms. Pufahl's back injury, not her fibromyalgia. In characterizing the treatment of Ms. Pufahl's migraine symptoms and back injury as conservative, the ALJ considered Ms. Pufahl's conditions and treatment, as he was required to, and further supported his credibility analysis. *See Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021) (holding that when an ALJ mentioned the lack of impingement on the claimant's spine and the lack of treatment for her spinal issues, the ALJ was properly considering the claimant's condition and treatment and providing facts supportive of her credibility analysis); *see also Prill v. Kijakazi*, 23 F.4th 738, 749 (7th Cir. 2022) (holding that the ALJ did not err in considering the claimant's conservative treatment of injections, orthotics, and physical therapy). The ALJ did not err in doing so.

[12] *See Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010) (approving an ALJ's discounting of a treating physician's opinion where the opinion was unexplained and the doctor's treatment notes did not clarify his reasoning); *Prill*, 23 F.4th at 751 ("[W]hen a physician's opinion is based primarily ( … continued)

In sum, the ALJ's decision to discount the opinions of Dr. Reshel, Dr. Knoernschild, and Dr. Boffeli is supported by substantial evidence.[13]

Ms. Pufahl next submits that even if the opinions of Dr. Reshel, Dr. Knoernschild, and Dr. Boffeli were not entitled to controlling weight, the ALJ erred by improperly weighing the physicians' opinions. After declining to give a physician's opinion controlling weight, the amount of weight an ALJ decides to allot the opinion depends on various factors "includ[ing] the length, nature, and extent of the physician and claimant's treatment relationship;" whether the physician's

---

upon a patient's subjective complaints, the ALJ may discount that opinion."); *Liskowitz v. Astrue*, 559 F.3d 736, 742 (7th Cir. 2009)) ("A retrospective diagnosis may be considered only if it is corroborated by evidence contemporaneous with the eligible period." (quoting *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998)).

[13] In contending that the ALJ's evaluation of their opinions was flawed, Ms. Pufahl highlights the physicians' lists of symptoms, diagnoses, and findings provided in their impairment questionnaires. We are unconvinced, however, that these noted diagnoses and symptoms demonstrate that the ALJ's findings were not supported by substantial evidence. *See Crowell v. Kijakazi*, 72 F.4th 810, 818 (7th Cir. 2023); *Bakke v. Kijakazi*, 62 F.4th 1061, 1068–69 (7th Cir. 2023).

Like the district court, we also conclude Ms. Pufahl's claim that "the only medical findings relevant to fibromyalgia are the presence of tender points and associated symptoms" is not legally supported. Appellant's Br. 39. The ALJ is permitted to consider evidence beyond tender points and associated symptoms to determine the severity and functional effects of a claimant's fibromyalgia. SSR 12-2p, 2012 WL 3104869 (July 25, 2012). As the district court also stated, the ALJ reasonably considered evidence documenting Ms. Pufahl's full range of motion in the spine and extremities, normal gait, and intact strength and sensation. These findings were relevant to Ms. Pufahl's back pain.

opinions are supported by sufficient explanations; and "whether the physician specializes in the medical conditions at issue." *Crowell v. Kijakazi*, 72 F.4th 810, 816 (7th Cir. 2023); 20 C.F.R. § 404.1527(c)(2)–(6). "If the ALJ discounts the physician's opinion after considering these factors, we must allow that decision to stand so long as the ALJ 'minimally articulate[d]' his reasons." *Elder*, 529 F.3d at 415 (alteration in original) (internal quotation marks omitted) (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)). The ALJ considered the applicable factors as to the three physicians and provided in detail his rationale for assigning less weight to their opinions. The ALJ's discounting of the opinions of Dr. Reshel, Dr. Knoernschild, and Dr. Boffeli did not constitute legal error.

Ms. Pufahl also contends that the ALJ erred in discounting some of the opinions of her therapist, Ms. Kannenberg. A therapist does not qualify as a treating source[14] and thus the ALJ need only explain the weight given to a therapist's opinion "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." *Grotts*, 27 F.4th at 1277 (quoting 20 C.F.R. § 404.1527(f)(2)). "It is enough for an ALJ to summarize the findings of a non-treating source's opinion and note that those findings are not corroborated by objective evidence in the record." *Id.*

The ALJ satisfied this standard. The ALJ summarized Ms. Kannenberg's opinions, described which opinions were

---

[14] *See* § 404.1527(a)(2) (stating a treating source is an "acceptable medical source"); *id.* § 404.1502(a) (not listing a therapist as an "acceptable medical source").

allotted some weight given the supporting evidence, and explained that he gave little weight to the rest of Ms. Kannenberg's opinions.[15] He found some of her assessments "too restrictive given the longitudinal record."[16] The ALJ specifically noted how he found the marked limitations Ms. Kannenberg assessed to be inconsistent with Ms. Pufahl's "therapy records documenting stability, the essentially normal psychiatric examinations, progress notes showing improved function with medication and therapy, and [Ms. Pufahl's] activities of daily living."[17] He also characterized Ms. Kannenberg's statement about absenteeism from work as speculative. This discussion more than sufficiently enables us to follow the ALJ's

---

[15] Ms. Pufahl submits that the ALJ failed to incorporate many specific moderate restrictions found by Ms. Kannenberg and Dr. Boffeli in the mental RFC finding. However, the ALJ specified which of Dr. Boffeli's and Ms. Kannenberg's opinions about Ms. Pufahl's moderate limitations he found supported and the amount of weight he allotted to their opinions. The ALJ acknowledged and responded to Dr. Boffeli's primary conclusions and summarized Ms. Kannenberg's opinions, noting which findings he found were not corroborated by objective evidence in the record. This was sufficient. *See Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021) ("[I]f she is complaining that the ALJ's summary was a partial summary of select evidence, that is equally unavailing because all summaries must be partial and selective."); *Crowell*, 72 F.4th at 815 ("An administrative law judge … is not required to spell out in the record every piece of evidence that he considered and then accepted or rejected."); *Grotts v. Kijakazi*, 27 F.4th 1273, 1277 (7th Cir. 2022) (stating that an ALJ must only "summarize the findings of a non-treating source's opinion and note that those findings are not corroborated by objective evidence in the record"). The ALJ did not need to comment on each line of Dr. Boffeli's and Ms. Kannenberg's opinions.

[16] A.R. 1348.

[17] *Id.*

reasoning. *See id.* The ALJ permissibly discounted some of
Ms. Kannenberg's opinions.[18]

**B.**

Turning to Ms. Pufahl's submission that the ALJ failed to
evaluate properly her subjective complaints, "[w]e will over-
turn the ALJ's evaluation of a claimant's subjective symptoms
only if it is 'patently wrong, which means that the decision
lacks any explanation or support.'" *Hess v. O'Malley*, 92 F.4th
671, 679 (7th Cir. 2024) (quoting *Murphy v. Colvin*, 759 F.3d
811, 816 (7th Cir. 2014)). As we have written:

> Subjective statements by claimants as to pain or
> other symptoms are not alone conclusive

---

[18] Ms. Pufahl also contends that "contrary to the rule that 'a non-examin-
ing physician does not, by itself, suffice [as substantial evidence]," the ALJ
relied on the opinions of non-examining state agency consultants. Appel-
lant's Br. 47 (alteration in original) (quoting *Vanprooyen v. Berryhill*, 864
F.3d 567, 573 (7th Cir. 2017)). Ms. Pufahl is incorrect. The ALJ gave "some
weight to the opinions of the state agency psychological consultants." A.R.
1345. As the ALJ thoroughly detailed, however, he did not solely rely on
non-examining physicians in coming to his RFC finding—he relied on
many others' opinions. Further, the ALJ still considered the opinions of
Dr. Reshel, Dr. Knoernschild, Dr. Boffeli, and Ms. Kannenberg, albeit with
discounted weight.

In addition, Ms. Pufahl relatedly argues that "[t]he ALJ failed to cite to
any *specific* medical facts or to even persuasive non-medical evidence that
supports the physical RFC finding … after dismissing all the available
medical opinions on the issue." Appellant's Br. 43. This criticism is also
unpersuasive. The ALJ had to "consider the entire record," but did not
need "to rely entirely on a particular physician's opinion or choose be-
tween the opinions [of] any of the claimant's physicians." *Schmidt v.
Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). The ALJ here considered the entire
record and many physicians' opinions in coming to the ultimate RFC find-
ing.

> evidence of disability and must be supported by
> other objective evidence. The regulations in-
> struct ALJs to consider a number of factors, in-
> cluding: (1) relevant medical evidence, including
> intensity and limiting effects of symptoms;
> (2) treatment and efficacy; (3) return to gainful
> activity; (4) work during disability period;
> (5) daily activities; and (6) statements incon-
> sistent with the record.

*Grotts*, 27 F.4th at 1278 (citations omitted). "An ALJ need not discuss every detail in the record as it relates to every factor." *Id.* "As long as an ALJ gives specific reasons supported by the record, we will not overturn a credibility determination unless it is patently wrong." *Id.* at 1279.

The ALJ concluded that Ms. Pufahl's "statements about the intensity, persistence, and limiting effects of her symptoms" were "not entirely consistent with the evidence."[19] The ALJ thoroughly explained how Ms. Pufahl's statements often conflicted with medical evidence documenting her physical and mental abilities. He also noted effective treatments for many of her impairments and her ability to partake in some daily activities. These reasons, accompanied by specific record evidence the ALJ highlighted in his decision, provide sufficient support for the decision to discount Ms. Pufahl's subjective reports of her symptoms. *See id.*; *Gedatus*, 994 F.3d at 903–04.

Ms. Pufahl nonetheless submits that the ALJ's evaluation of her subjective statements was patently wrong. She maintains that "the ALJ's suggestion that [her] course of treatment

---

[19] A.R. 1341.

along with modest improvement and stabilization is inconsistent with a finding of disability is erroneous."[20] But the ALJ was permitted to consider the treatment of Ms. Pufahl's conditions and the effectiveness of that treatment in support of his credibility analysis. *See Grotts*, 27 F.4th at 1278; *Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021) (citing 20 C.F.R. § 416.929(c)(3)(v)). In short, we must decline the invitation to reweigh the evidence.

Ms. Pufahl also contends that "[t]he ALJ … erred by discounting [her] allegations because she engages in activities of daily living."[21] She states that "the ALJ conceded they do not show the ability to perform full-time work."[22] But Ms. Pufahl extracts this statement from its context. The ALJ stated, "While this evidence [of Ms. Pufahl's daily activities] does not establish that she could engage in fulltime employment, it is one factor to consider when evaluating the overall level of functioning."[23] Thus, as he was permitted to do, the ALJ considered Ms. Pufahl's daily activities as a factor alongside numerous other considerations in evaluating her subjective statements and ultimately finding her statements to be not entirely consistent with the evidence. *See Jeske v. Saul*, 955 F.3d 583, 593 (7th Cir. 2020); *Deborah M.*, 994 F.3d at 791; *Grotts*, 27 F.4th at 1278. The ALJ did not err in his consideration of Ms. Pufahl's daily activities.

---

[20] Appellant's Br. 51.

[21] *Id.* at 52.

[22] *Id.*

[23] A.R. 1342.

The ALJ provided specific, well-supported reasons for discounting Ms. Pufahl's subjective complaints. That determination is not patently wrong and therefore provides no basis for overturning the ALJ's credibility determination.

**C.**

Lastly, we address Ms. Pufahl's argument that the ALJ's hypothetical question posed to the VE did not accurately describe all her mental limitations. The question was:

> Assume a hypothetical individual of the claimant's age and education and with the past jobs that you just described. Further assume that this hypothetical individual is limited to light work, as defined in the regulations and then is further limited as follows. Can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. Can never climb ladders, ropes or scaffolds. Must avoid hazards, such as unprotected heights, moving mechanical parts and operating a motor vehicle. Can tolerate moderate noise in the work environment and lighting no brighter than in a typical office environment. Can tolerate occasional exposure to dust, odors, fumes and other pulmonary irritants. Can perform simple and routine tasks. Can maintain attention and concentration for two-hour segments. Can make simple work-related decisions. Can tolerate occasional changes in a routine work setting. Can frequently interact with supervisors and coworkers and occasionally interact with the public. Given that hypothetical individual, could

the hypothetical individual perform any of claimant's past work?[24]

Ms. Pufahl submits that the question "failed to describe sufficient limitations in [her] ability to concentrate over a period of time and persist at tasks."[25] Her argument relies primarily on our cases that have held that terms such as "simple, routine, and repetitive tasks" do not account adequately for issues of concentration, persistence, or pace. *See, e.g., Varga v. Colvin*, 794 F.3d 809, 814–15 (7th Cir. 2015); *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

Indeed, "[i]n most cases, … employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010). However, the ALJ here included a further limitation beyond simple and routine tasks by limiting the hypothetical claimant to only being able to "maintain attention and concentration for two-hour segments."[26] The ALJ thus expressly included Ms. Pufahl's moderate limitations in concentration, persistence, or pace in the hypothetical question posed to the VE.[27]

---

[24] *Id.* at 1396.

[25] Appellant's Br. 53.

[26] A.R. 1396.

[27] Ms. Pufahl also contends that the limitations included by the ALJ inadequately accounted for the state agency medical consultants' opinions that she is moderately limited in completing a normal workday and workweek without interruptions from symptoms and in performing at a consistent pace without an unreasonable number of breaks. However, the limitations that Ms. Pufahl "[c]an perform simple and routine tasks" and "[c]an ( … continued)

Substantial evidence supports the ALJ's conclusion that the restrictions in the hypothetical question sufficiently addressed Ms. Pufahl's issues of concentration, persistence, and pace.

### Conclusion

The judgment of the district court is affirmed.

AFFIRMED

---

maintain attention and concentration for two-hour segments," naturally function as limitations on one's ability to complete a normal workday without interruption and to perform at a consistent pace. *Id.* And in any case, "it is 'unclear what kinds of work restrictions might address [Ms. Pufahl's] limitations in concentration, persistence, or pace because [s]he hypothesizes none.'" *Pavlicek v. Saul*, 994 F.3d 777, 784 (7th Cir. 2021) (quoting *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019)).